DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
CARBAJAL & MCNUTT, LLP
625 South Eighth Street
Las Vegas, Nevada 89101
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@cmlawnv.com
mcw@cmlawnv.com

Attorneys for *Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BART STREET III, a Nebraska Limited Liability Company,<br><br>    Plaintiff,<br><br>Vs.<br><br>ACC ENTERPRISES, LLC, a Nevada Limited Liability Company; ACC INDUSTRIES, INC., a Nevada corporation; CALVADA PARTNERS, LLC, a Nevada Limited Liability Company;<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT** |

Bart Street III, LLC ("Bart Street") complains as follows against ACC Industries Inc. ("Industries"), ACC Enterprises, LLC ("Enterprises") and Calvada Partners, LLC ("Calvada").

**PARTIES AND JURISDICTION**

1.      Bart Street is a Nebraska limited liability company. Its members are citizens of states other than Nevada.

2.      Industries is a Nevada corporation. Its principal place of business is in Nevada.

3.      Enterprises is a Nevada limited liability company. Based upon information and belief, its members are citizens of Nevada.

4.      Calvada is a Nevada limited liability company. Based upon information and belief, its members are citizens of Nevada.

5.      This Court has jurisdiction over Defendants because Defendants are citizens of Nevada, and this action arises from Defendants' contacts with Nevada.

COMPLAINT - 1

6. This Court has subject matter jurisdiction because Plaintiff is diverse from all Defendants, and the amount in controversy exceeds $75,000.00.

7. The Southern District of Nevada is a proper venue because the acts, events, occurrences, decisions, transactions, and/or omissions giving rise to this lawsuit occurred in Clark County, Nevada, or Nye County, Nevada.

## GENERAL FACTUAL ALLEGATIONS

8. Each paragraph and allegation herein is expressly incorporated into each subsequent section and cause of action in this Complaint.

9. To the extent two or more causes of action or forms of relief or damages requested herein are incompatible as a matter of law, each such cause of action is pled in the alternative, and each such form of damages or relief is requested in the alternative.

10. To the extent documents are cited in this Complaint in support of certain allegations, those citations are merely examples of the evidence supporting the allegations and do not constitute the sole or exclusive evidence supporting the allegations.

11. Hereinafter, Enterprises and Industries are collectively referred to as "ACC."

12. Hereinafter, ACC and Calvada are collectively referred to as the "Borrowers."

**A.    The First Promissory Note.**

13. On August 19, 2016, ACC executed a written promissory note by which it received a loan of $3.5 million dollars from Bart Street (hereinafter, the "First Promissory Note") (hereinafter, this loan is referred to as the "First Loan").

14. The First Promissory Note controlled how ACC could use the loan monies. Specifically, it required ACC to (**i**) use $725,000.00 as operating capital; (**ii**) pay $25,000.00 to Bart Street as due diligence costs; (**iii**) pay $2.2 million dollars to Beverly Pacific, LLC (hereinafter, "BP") to pay off a prior loan; (**iv**) pay $275,000.00 to Insight Media, LLC; and (**v**) pay $275,000.00 to Hill Health, LLC.

15. In or around March 2016, BP made a loan to Industries, Enterprises, or both entities for around $2 million dollars (hereinafter, the "BP Loan"). The monies loaned pursuant to the First

1  Promissory Note were intended, in part, to retire and take out the BP Loan.  This intent is evident
2  from the plain, clear, and ordinary language in the First Promissory Note requiring ACC to pay $2.2
3  million dollars of the proceeds from the First Loan to BP.

4        16.    The First Promissory Note has a maturity date of September 1, 2017.  On that date, the
5  outstanding principal amount of the note, together with all accrued interest, would be due and
6  payable.[1]

7        17.    ACC agreed to pay simple interest on the loan principal from the effective date of the
8  First Promissory Note until payment of the loan in full, with such interest accruing at the rate of seven
9  percent (7%) per annum until paid.[2]

10       18.    Upon any event of default and following written notice to ACC, the First Promissory
11 Note could be accelerated, and in such event, all principal and unpaid accrued interest would become
12 immediately due and payable.[3]

13       19.    The First Promissory Note entitled Bart Street to receive default interest at the
14 maximum rate of interest allowable under the law.[4]  Bart Street is a Nebraska limited liability
15 company, and Nebraska law entitles Bart Street to default interest of sixteen percent (16%).[5]

16       20.    The First Promissory Note obligated ACC to pay all collection costs, including but not
17 limited to attorney's fees.[6]

18       21.    The First Promissory Note gave Bart Street a right of first refusal to obtain fully paid
19 and non-assessable units or shares in Industries or Enterprises.[7]

20 **B.**    **The Second Promissory Note.**

21       22.    On September 6, 2016, the Borrowers executed a written promissory note (hereinafter,

---

[1] *See, e.g.,* Ex. 1, the First Promissory Note at ¶¶ 1, 3.
[2] *See, e.g., Id.* at ¶ 2.
[3] *See, e.g., Id.* at ¶ 5.
[4] *See, e.g., Id.* at ¶ 6.
[5] NEB. REV. STAT. § 45-101.03.
[6] *See, e.g.,* Ex. 1, First Promissory Note at ¶ 8.
[7] *See, e.g., Id.* at ¶ 12 ("During the period of time that there is any outstanding principal or interest due under this Note, at the option of [Bart Street], [Bart Street] shall have a First Right of Refusal to participate and obtain fully paid and non-assessable Units or Shares of either or both ACC INDUSTRIES, INC. and ACC ENTERPRISES, LLC.")

the "Second Promissory Note") (hereinafter, the First Promissory Note and the Second Promissory Note are collectively the "Promissory Notes") by which they received a loan of $1.2 million dollars from Bart Street (hereinafter, this loan is referred to as the "Second Loan") (hereinafter, the First Loan and the Second Loan are collectively the "Loans").

23. The Second Promissory Note controlled how the Borrowers could use the loan monies. Specifically, it required them to (**i**) use $500,000.00 to acquire parcel #040-041-35 in Nye County, Nevada (hereinafter, the "35 Parcel"), and (**ii**) use $700,000.00 to acquire parcel #040-041-34 in Nye County, Nevada (hereinafter, the "34 Parcel").

24. The Second Promissory Note had a maturity date of September 1, 2017. On that date, the outstanding principal amount of the note, together with all accrued interest, would be due and payable.[8]

25. The Borrowers agreed to pay simple interest on the loan principal from the effective date of the Second Promissory Note until payment of the loan in full, with such interest accruing at the rate of three percent (3%) per annum until paid.[9]

26. Upon any event of default and following written notice to the Borrowers, the Second Promissory Note could be accelerated, and in such event, all principal and unpaid accrued interest would become immediately due and payable.[10]

27. The Second Promissory Note entitled Bart Street to receive default interest at the maximum rate of interest allowable under the law.[11] Bart Street is a Nebraska limited liability company, and Nebraska law entitles Bart Street to default interest of sixteen percent (16%).[12]

28. The Second Promissory Note obligated the Borrowers to pay all collection costs, including but not limited to attorney's fees.[13]

29. The Second Promissory Note gave Bart Street a right of first refusal to obtain fully

---

[8] *See, e.g.*, Ex. 2, Second Promissory Note at ¶¶ 1, 3.
[9] *See, e.g., Id.* at ¶ 2.
[10] *See, e.g., Id.* at ¶ 5.
[11] *See, e.g., Id.* at ¶ 6.
[12] NEB. REV. STAT. § 45-101.03.
[13] *See, e.g.*, Ex. 2, Second Promissory Note at ¶ 8.

COMPLAINT - 4

paid and non-assessable units or shares in Industries or Enterprises.[14]

30. Hereinafter, the right of first refusal clauses in the First Promissory Note and the Second Promissory Note are collectively the "ROFR Clauses."

**C.     The Borrowers Breached the Promissory Notes.**

31. Following the execution of the Promissory Notes, ACC underwent a corporate restructuring, revised or amended its governing documents, issued new membership units, and transferred, sold, or assigned all or a portion of ACC's equity and assets.

32. On or around October 24, 2016, Enterprises entered an amended operating agreement (hereinafter, the "Amended Operating Agreement"). Around the same time, Enterprises also entered a membership interest purchase agreement (hereinafter, the "Membership Interest Agreement") with Vert Holdings, LLC ("Vert"). Hereinafter, the Amended Operating Agreement and the Membership Interest Agreement are collectively the "Vert Documents."

33. The Vert Documents demonstrate Enterprises acquired or merged with Industries.[15]

34. The Vert Documents make clear that ACC did not use any of the loan monies from the First Loan to retire and take out the BP Loan, as expressly required by the First Promissory Note. The Vert Documents identify BP as Vert's predecessor in interest.[16] Pursuant to the Vert Documents, the BP Loan was converted into equity in Enterprises, and Vert received fully paid and non-assessable units in Enterprises.[17] Prior to the issuance to Vert of fully paid and non-assessable units

---

[14] *See, e.g., Id.* at ¶ 12 ("During the period of time that there is any outstanding principal or interest due under this Note, at the option of [Bart Street], [Bart Street] shall have a First Right of Refusal to participate and obtain fully paid and non-assessable Units or Shares of either or both ACC INDUSTRIES, INC. and ACC ENTERPRISES, LLC.")

[15] *See, e.g.,* Amended Operating Agreement at pg. 1, ¶ B ("The Initial Members (as defined herein) have formed [Enterprises] to operate a cannabis cultivation business in Pahrump, Nevada, and [Enterprises] has succeeded to substantially all of the assets of, and assumed certain liabilities of, ACC Industries, Inc., a Nevada corporation, previously engaged in such business.")

[16] *See, e.g.,* Ex. 3, Membership Interest Agreement at pg. 1, ¶ 1.4.

[17] *See, e.g.,* Ex. 4, Amended Operating Agreement at pg. 15, ¶ 3.1(b) ("On the Effective Date, Vert shall make a Capital Contribution to the Company in the amount of $2,000,000, through the conversion of the principal balance of that certain Convertible Promissory Note dated March 15, 2016, issued by ACC Industries, Inc. (and thereafter assumed by [Enterprises]) to Beverly Pacific, LLC (as predecessor in interest to Vert), in accordance with its terms; provided, however, that any accrued but unpaid interest on the Note at the time of such conversion is hereby waived."); *see also* Ex. 3, Membership Interest Agreement at pg. 1, ¶ 1.4 (this paragraph notes the conversion of the

in Enterprises, Bart Street was never notified given or offered its express right of first refusal, as required by the Promissory Notes.

35. Additionally, the Vert Documents gave Vert, not Bart Street, the right of first refusal to purchase any new units issued by Enterprises.[18]  This provision in the Vert Documents conflicts with and breaches the ROFR Clauses.

36. The Vert Documents also gave Vert control over certain acts and decisions by Enterprises.[19]

37. After entering the Second Promissory Note and receiving the loan monies for the Second Loan, the Borrowers did not purchase the 34 Parcel.

38. On or around December 23, 2016, Bart Street provided the Borrowers with written notice that they are in default under the Promissory Notes (hereinafter, the "Notice of Default").[20]  Upon receipt of the Notice of Default, the Borrowers failed and refused to repay the Promissory Notes immediately, as expressly required by the Promissory Notes.

39. As a direct and proximate result of the above-referenced events, Bart Street has suffered injuries, losses, and damages in an amount in excess of seventy five thousand dollars ($75,000.00).  But for the above-referenced events, Bart Street would not have suffered these injuries,

---

promissory note to equity); *Id.* at pg. 2, ¶ 2.3(c) (this paragraph notes the units in Enterprises issued to Vert were fully paid and non-assessable).

[18] *See, e.g.,* Ex. 4, Amended Operating Agreement at pg. 15, ¶ 3.2(a) ("Each Member not under the Control of Misle Member or Seltzer Member ('Eligible Members') shall have a right of first refusal, for a period of twenty (20) days after delivery of such notice by the Managers, to elect to purchase any or all of such Equity Securities (regardless of the Applicable Division) on the terms and conditions specified by the Managers."); *see also Id.* at pg. 9 (defining the Misle Member); *Id.* at pg. 12 (defining the Seltzer Member); *Id.* at pg. 7 ("'Equity Securities' means any Units or other equity securities (of any class or series) issued or proposed to be issued after the Effective Date by the Company or any of its subsidiaries and rights, convertible securities, options or warrants to purchase such Units or other equity securities and securities of any type whatsoever that are, or may become, exercisable or convertible into Units or other equity securities.")

[19] *See, e.g.,* Ex. 4, Amended Operating Agreement at pg. 20, ¶ 5.3 ("Notwithstanding any provision hereof to the contrary, Vert, acting alone, shall at all times have the sole and exclusive right to direct the Managers, on behalf of [Enterprises] and at [Enterprises'] expense, to exercise any and all rights and powers [Enterprises] or Vert may have pursuant to the Asset Contribution Agreement (whether as an 'Indemnified Party' as defined in Section 5 thereof or otherwise), the Guaranty or the Membership Interest Purchase Agreement (referred to in this Section 5.3 as the 'applicable agreement').")

[20] *See, e.g.,* Ex. 5, D. McNutt Dec. 23, 2016 Letter to R. Hawkins.

COMPLAINT - 6

losses, and damages. Pursuant to this lawsuit, Bart Street is seeking monetary damages and any additional relief found fair, equitable, just, or proper by the Court, including but not limited to litigation costs, interest, and the expense of hiring counsel to prosecute this lawsuit.

**FIRST CAUSE OF ACTION**
**Breach of Contract for the First Promissory Note**
**(Against ACC)**

40. The First Promissory Note is a valid, binding, and enforceable contract between Bart Street and ACC.

41. Bart Street performed its obligations under the First Promissory Note by funding the First Loan.

42. ACC breached the First Promissory Note by engaging in conduct that includes, but is not limited to, the following:

    a) Failing to abide by the ROFR Clause;

    b) Failing to give Bart Street a right of first refusal to purchase Industries' units or shares before Enterprises purchased or acquired those units or shares;

    c) Failing to repay the First Promissory Note immediately after the Notice of Default;

    d) Failing to use the loan monies for the First Loan as required by the First Promissory Note;

    e) Failing to use the loan monies for the First Loan to retire and take out the BP Loan;

    f) Giving Vert the right of first refusal to purchase any new units issued by Enterprises in violation of the ROFR Clause; *and*

    g) Issuing to Vert fully paid and non-assessable units in Enterprises without giving Bart Street a right of first refusal, as required by the ROFR Clause.

43. As a direct and proximate result of the above-referenced events, Bart Street has suffered injuries, losses, and damages in an amount in excess of seventy five thousand dollars ($75,000.00). But for the above-referenced events, Bart Street would not have suffered these injuries,

losses, and damages. Pursuant to this lawsuit, Bart Street is seeking monetary damages and any additional relief found fair, equitable, just, or proper by the Court, including but not limited to litigation costs, interest, and the expense of hiring counsel to prosecute this claim.

## SECOND CAUSE OF ACTION
### Breach of Contract for the Second Promissory Note
### (Against All Defendants)

44. The Second Promissory Note is a valid, binding, and enforceable contract between Bart Street and the Borrowers.

45. Bart Street performed its obligations under the Second Promissory Note by funding the Second Loan.

46. The Borrowers breached the Second Promissory Note by engaging in conduct that includes, but is not limited to, the following:

    a) Failing to abide by the ROFR Clause;

    b) Failing to give Bart Street a right of first refusal to purchase Industries' units or shares before Enterprises purchased or acquired those units or shares;

    c) Failing to repay the Second Promissory Note immediately after the Notice of Default;

    d) Failing to use the loan monies for the Second Loan as required by the Second Promissory Note;

    e) Failing to use the loan monies for the Second Loan to purchase the 34 Parcel;

    f) Giving Vert the right of first refusal to purchase any new units issued by Enterprises in violation of the ROFR Clause; *and*

    g) Issuing to Vert fully paid and non-assessable units in Enterprises without giving Bart Street a right of first refusal, as required by the ROFR Clause.

47. As a direct and proximate result of the above-referenced events, Bart Street has suffered injuries, losses, and damages in an amount in excess of seventy five thousand dollars ($75,000.00). But for the above-referenced events, Bart Street would not have suffered these injuries, losses, and damages. Pursuant to this lawsuit, Bart Street is seeking monetary damages and any

additional relief found fair, equitable, just, or proper by the Court, including but not limited to litigation costs, interest, and the expense of hiring counsel to prosecute this claim.

### THIRD CAUSE OF ACTION
**Breach of the Implied Covenant of Good Faith and Fair Dealing re: First Promissory Note (Against ACC)**

48. In Nevada, every contract imposes upon the parties an implied covenant of good faith and fair dealing. A party breaches the implied covenant by (**i**) performing a contract in a manner unfaithful to its purpose and that frustrates or denies the justified expectations of the other party; (**ii**) interfering with or failing to cooperate with an opposing party with the performance of a contract; (**iii**) acting arbitrarily, capriciously, or in bad faith; (**iv**) failing to exercise and perform discretionary powers under a contract in good faith; (**v**) unduly delaying performance or payment under a contract; or (**vi**) literally complying with the terms of a contract and therefore not technically breaching the contract but nevertheless violating the intent and spirit of the contract.

49. The First Promissory Note is a binding and enforceable contract that imposes an implied covenant of good faith and fair dealing upon ACC.

50. ACC breached the implied covenant by engaging in conduct that includes, but is not limited to, the following:

    a) Allowing Enterprises to acquire or merge with Industries;

    b) Allowing Vert to obtain control over certain acts and decisions by Enterprises;

    c) Failing to abide by the ROFR Clause;

    d) Failing to give Bart Street a right of first refusal to purchase Industries' units or shares before Enterprises purchased or acquired those units or shares;

    e) Failing to repay the First Promissory Note immediately after the Notice of Default;

    f) Failing to use the loan monies for the First Loan as required by the First Promissory Note;

    g) Failing to use the loan monies for the First Loan to retire and take out the BP Loan;

h) Giving Vert the right of first refusal to purchase any new units issued by Enterprises in violation of the ROFR Clause;

i) Issuing new membership units in ACC;

j) Issuing to Vert fully paid and non-assessable units in Enterprises without giving Bart Street a right of first refusal, as required by the ROFR Clause;

k) Issuing to Vert fully paid and non-assessable units in Enterprises, which devalued the ROFR Clause in the First Promissory Note;

l) Restructuring ACC's corporate structure and revising or amending ACC's governing documents; *and*

m) Transferring, selling, or assigning all or a portion of ACC's equity and assets.

48. As a direct and proximate result of the above-referenced events, Bart Street has suffered injuries, losses, and damages in an amount in excess of seventy five thousand dollars ($75,000.00). But for the above-referenced events, Bart Street would not have suffered these injuries, losses, and damages. Pursuant to this lawsuit, Bart Street is seeking monetary damages and any additional relief found fair, equitable, just, or proper by the Court, including but not limited to litigation costs, interest, and the expense of hiring counsel to prosecute this claim.

**FOURTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing re: Second Promissory Note**
**(Against All Defendants)**

51. In Nevada, every contract imposes upon the parties an implied covenant of good faith and fair dealing. A party breaches the implied covenant by (**i**) performing a contract in a manner unfaithful to its purpose and that frustrates or denies the justified expectations of the other party; (**ii**) interfering with or failing to cooperate with an opposing party with the performance of a contract; (**iii**) acting arbitrarily, capriciously, or in bad faith; (**iv**) failing to exercise and perform discretionary powers under a contract in good faith; (**v**) unduly delaying performance or payment under a contract; or (**vi**) literally complying with the terms of a contract and therefore not technically breaching the contract but nevertheless violating the intent and spirit of the contract.

52. The Second Promissory Note is a binding and enforceable contract that imposes an

implied covenant of good faith and fair dealing upon the Borrowers.

53. The Borrowers breached the implied covenant by engaging in conduct that includes, but is not limited to, the following:

    n) Allowing Enterprises to acquire or merge with Industries;

    o) Allowing Vert to obtain control over certain acts and decisions by Enterprises;

    p) Failing to abide by the ROFR Clause;

    q) Failing to give Bart Street a right of first refusal to purchase Industries' units or shares before Enterprises purchased or acquired those units or shares;

    r) Failing to repay the Second Promissory Note immediately after the Notice of Default;

    s) Failing to use the loan monies for the Second Loan as required by the Second Promissory Note;

    t) Failing to use the loan monies for the Second Loan to purchase the 34 Parcel;

    u) Giving Vert the right of first refusal to purchase any new units issued by Enterprises in violation of the ROFR Clause;

    v) Issuing new membership units in ACC;

    w) Issuing to Vert fully paid and non-assessable units in Enterprises without giving Bart Street a right of first refusal, as required by the ROFR Clause;

    x) Issuing to Vert fully paid and non-assessable units in Enterprises, which devalued the ROFR Clause in the Second Promissory Note;

    y) Restructuring ACC's corporate structure and revising or amending ACC's governing documents; *and*

    z) Transferring, selling, or assigning all or a portion of ACC's equity and assets.

49. As a direct and proximate result of the above-referenced events, Bart Street has suffered injuries, losses, and damages in an amount in excess of seventy five thousand dollars ($75,000.00). But for the above-referenced events, Bart Street would not have suffered these injuries, losses, and damages. Pursuant to this lawsuit, Bart Street is seeking monetary damages and any

additional relief found fair, equitable, just, or proper by the Court, including but not limited to litigation costs, interest, and the expense of hiring counsel to prosecute this claim.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment as to the First Promissory Note**
**(Against ACC)**

49. By paying the loan monies for the First Promissory Note to ACC, Bart Street conferred a benefit upon ACC, and ACC accepted, appreciated, and retained the benefit.

50. ACC has been unjustly enriched through its receipt and retention of the loan monies for the First Promissory Note and failure to repay the First Promissory Note to Bart Street.

51. It would be unjust, unfair, and inequitable for ACC to be allowed to retain the loan monies for the First Promissory Note and the other monies Bart Street is entitled to receive related to the First Promissory Note.

52. As a direct and proximate result of the above-referenced events, Bart Street has suffered injuries, losses, and damages in an amount in excess of seventy five thousand dollars ($75,000.00). But for the above-referenced events, Bart Street would not have suffered these injuries, losses, and damages. Pursuant to this lawsuit, Bart Street is seeking monetary damages and any additional relief found fair, equitable, just, or proper by the Court, including but not limited to litigation costs, interest, and the expense of hiring counsel to prosecute this claim.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment as to the Second Promissory Note**
**(Against All Defendants)**

53. By paying the loan monies for the Second Promissory Note to the Borrowers, Bart Street conferred a benefit upon the Borrowers, and the Borrowers accepted, appreciated, and retained the benefit.

54. The Borrowers have been unjustly enriched through their receipt and retention of the loan monies for the Second Promissory Note and failure to repay the Second Promissory Note to Bart Street.

55. It would be unjust, unfair, and inequitable for the Borrowers to be allowed to retain the loan monies for the Second Promissory Note and the other monies Bart Street is entitled to receive

related to the Second Promissory Note.

56. As a direct and proximate result of the above-referenced events, Bart Street has suffered injuries, losses, and damages in an amount in excess of seventy five thousand dollars ($75,000.00). But for the above-referenced events, Bart Street would not have suffered these injuries, losses, and damages. Pursuant to this lawsuit, Bart Street is seeking monetary damages and any additional relief found fair, equitable, just, or proper by the Court, including but not limited to litigation costs, interest, and the expense of hiring counsel to prosecute this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Monetary damages in excess of $75,000.00.
2. All relief found fair, equitable, just, or proper by the Court.
3. Attorney's fees, costs, and interest.
4. Equitable relief.

DATED January 10, 2017.

CARBAJAL & MCNUTT, LLP

*/s/ Dan McNutt*
DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
625 South Eighth Street
Las Vegas, Nevada 89101

Attorneys for Plaintiff