1     FENNEMORE CRAIG, P.C.
Mark Hawkins (Nevada Bar No. 8490)
2     Brenoch R. Wirthlin (Nevada Bar No. 10282)
300 South Fourth Street, Suite 1400
3     Las Vegas, Nevada  89101
Telephone:  (702) 692-8000
4     Facsimile:  (702) 692-8099
Email:  bwirthlin@fclaw.com
5     *Attorneys for Defendant Calvada Partners, LLC*

6

7

8     **UNITED STATES DISTRICT COURT**

9     **DISTRICT OF NEVADA**

10     BART STREET III, a Nebraska Limited     Case No. 2:17-cv-00083-GMN-VCF
Liability Company,
11

12            Plaintiff,

13       v.                         **DEFENDANT CALVADA PARTNERS,
LLC'S SUPPLEMENT TO
MOTION TO DISMISS**

14     ACC ENTERPRISES, LLC, a Nevada
Limited Liability Company; ACC
15     INDUSTRIES, INC., a Nevada corporation;
CALVADA PARTNERS, LLC, a Nevada
16     Limited Liability Company,

17            Defendants.

18

19        Defendant Calvada Partners, LLC ("Calvada"), by and through counsel, Fennemore Craig,

20 P.C., hereby submits its supplement to its motion to dismiss Plaintiff Bart Street III's ("Plaintiff"

21 or "Bart Street") Complaint for lack of subject matter jurisdiction ("Motion") to be incorporated

22 in and considered part of the Motion.  Attached as **Exhibit 1** to this Supplement is the

23 Supplemental Declaration of Howard Misle ("Misle Declaration") in support of the Motion.  As

24 set forth in the Misle Declaration, defendants ACC Industries, Inc., and ACC Enterprises, LLC

25 ("ACC Entities") will submit a motion to dismiss as well.  In addition, as the Misle Declaration

26 makes clear, Calvada and the ACC Entities are engaged in the business of growing marijuana --

FENNEMORE CRAIG, P.C.

1    which Bart Street knew all along – which is permissible under state law that has no federal

2    counterpart; accordingly, this case is more appropriately in state court.  Moreover, Calvada and

3    the ACC Entities filed their complaint in State Court – where this matter should be tried -- on

4    December 14, 2016, well before Bart Street's improper complaint was filed in federal court, and

5    Calvada and the ACC Entities plan to file a motion to dismiss based on the Colorado River

6    doctrine.  *See Fidelis Holdings, LLC v. Hand*, No. 2:15-CV-00147-GMN, 2015 WL 4997318, at

7    *2 (D. Nev. Aug. 19, 2015) (*citing Colorado River Water Conservation Dist. v. United States,* 42

8    U.S. 800, 817 (1976)).[1]  Finally, as the Misle Declaration points out, it is clear Bart Street failed

9    to include a necessary party in this litigation, which would destroy diversity jurisdiction, and

10   which entity may have been Solutionary, Inc., and that Steve Idelman, the principal of Bart Street,

11   corresponded with Calvada and the ACC Entities with the signature block which included the

12   email address steveidelman@solutionary.com.  *See* Exhibit 2, hereto; Misle Declaration at ¶ 13.

13       DATED this 2nd day of March, 2017.

        FENNEMORE CRAIG, P.C.

14

15

16       By

17          Mark Hawkins, Esq. (Bar No. 8490)
            Brenoch Wirthlin, Esq. (Bar No. 10282)
18          1400 Bank of America Plaza
            300 South Fourth St. 14th Floor
19          Las Vegas, NV 89101
            *Attorneys for Defendants*
20

21

22

23

24

25

26   [1] Calvada and the ACC Entities filed their First Amended Complaint in the state court action on
     February 24, 2017.

FENNEMORE CRAIG, P.C.

# EXHIBIT 1

# EXHIBIT 1

1   FENNEMORE CRAIG, P.C.
    **Mark Hawkins** (Nevada Bar No. 8490)
2   Brenoch R. Wirthlin (Nevada Bar No. 10282)
    Kevin Hejmanowski (Nevada Bar No. 10612)
3   300 South Fourth Street, Suite 1400
    Las Vegas, Nevada 89101
4   Telephone: (702) 692-8000
    Facsimile: (702) 692-8099
5   Email: bwirthlin@fclaw.com
           khejmanowski@fclaw.com
6   *Attorneys for Defendant Calvada Partners, LLC*

7

8                  **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10  BART STREET III, a Nebraska Limited         Case No. 2:17-cv-00083-GMN-VCF
    Liability Company,
11
                   Plaintiff,
12
         v.
13                                              **SUPPLEMENTAL DECLARATION OF**
                                                **HOWARD MISLE IN SUPPORT OF**
    ACC ENTERPRISES, LLC, a Nevada              **MOTION TO DISMISS**
14  Limited Liability Company; ACC
    INDUSTRIES, INC., a Nevada corporation;
15  CALVADA PARTNERS, LLC, a Nevada
    Limited Liability Company,
16
                   Defendants.
17

18
         HOWARD MISLE hereby declares as follows:
19
         1.      I am a managing member of ACC Enterprises, LLC, and a director of ACC
20
    Industries, Inc. (together with ACC Enterprises, LLC referred to herein as the "ACC Entities").
21
         2.      I make this declaration based on my personal knowledge or upon my good faith
22
    understanding and belief where stated.
23
         3.      The ACC Entities have not yet appeared in this action.
24
         4.      Defendant Calvada Partners, LLC ("Calvada") has filed a motion to dismiss in this
25
    action ("Motion").
26

FENNEMORE CRAIG, P.C.    12649919.1/041982.0004

1      5.     I make this Declaration in support of Calvada Partners, LLC's Motion.

2      6.     Because Calvada was served with the complaint before the ACC Entities, Calvada

3 was required to file its Motion before the deadline for the ACC Entities to respond to the

4 Complaint.

5      7.     The ACC Entities will be filing a Motion to dismiss along with Calvada and

6 requests that the Court hear all motions to dismiss at one time.

7      8.     Calvada, along with the ACC Entities Enterprises, LLC and ACC Industries, Inc.

8 (collectively "Defendants"), owns and operates a marijuana cultivation plant in Pahrump,

9 Nevada.  In order to fund operations of Defendants' business, ACC Industries entered into that

10 certain loan agreement with a lender Beverly Pacific ("BP") in the amount $2,000,000 on or

11 around March 15, 2016 ("March 2016 Loan").

12      9.     Pursuant to the terms of the March 2016 Loan, which is evidenced by that certain

13 promissory note of the same date, ACC Industries is required to repay the amounts received

14 pursuant to the March 2016 Loan on or before September 15, 2017.

15      10.    Because Defendants needed additional funding to grow their business, they entered

16 into negotiations with Steve Idelman, principal of Bart Street and, on information and belief,

17 believed to own or control Solutionary, for additional capital to fund Defendants' Pahrump

18 business.

19      11.    On information and belief, Steve Idelman ("Idelman"), the principal of Bart Street

20 is a friend of the family member of mine.

21      12.    After substantial negotiation, Defendants and Bart Street entered into an agreement

22 pursuant to which Bart Street and Idelman's Nevada entity, believed to possibly be Solutionary,

23 agreed to fund Defendants' business in the total principal amount of $9,000,000.

24      13.    During the negotiations Idelman corresponded with us with a signature block

25 which included the email address steveidelman@solutionary.com.

26

FENNEMORE CRAIG, P.C.

12649919.1/041982.0004

14.     Because recreational marijuana was not permitted in Nevada at the time of the parties' negotiations, and because the parties believed there was a substantial likelihood that recreational marijuana would be approved in Nevada in November, 2016, the parties agreed that Bart Street would lend Defendants $4,700,000 prior to the vote in November, 2016 regarding recreational marijuana and the remaining $4,300,000 would be provided in the form of equity after the vote in November, 2016, provided the vote approved the sale and distribution of recreational marijuana in Nevada. Additionally, if the vote passed, it was also understood that the loan of $4,700,000 would be converted into equity as well or at a minimum $1,300,000 for a total of $6,000,000 in equity and $3,000,000 in loans.

15.     On or around August 19, 2016, Defendants ACC Industries, ACC Enterprises, and Defendant entered into that certain Promissory Note in Las Vegas, Nevada in the amount of $3,500,000 ("August 2016 Note"). Pursuant to the terms of the August 2016 Note, the outstanding principal amount of the note, together with all accrued interest, is due and payable on September 1, 2017.

16.     However, subsequent to the execution of the August 2016 Note, the parties agreed that Defendants would instead convert BP's debt to equity in the Bart Street, and would instead use the $2,200,000 previously intended to pay off BP as working capital for the Defendants' company. Bart Street and Solutionary were fully and completely informed of this modification to the parties agreement and agreed, verbally and through email correspondence, to this change.

17.     Subsequently, in November, 2016, the use, production and distribution of recreational marijuana was approved in Nevada. Pursuant to the terms of the parties' agreement, Defendants anticipated Bart Street and Solutionary[1] would provide the additional $4,300,000 in funding to Defendants it was contractually obligated to provide. However, in violation of their

---

[1] Assuming that was the entity which was referenced by Idelman as being involved in the transaction.

1  contractual agreement with Defendants, Bart Street and Solutionary have failed and refused to

2  provide said additional funding, to the detriment and damage of Defendants.

3      18.     In addition, Calvada and the ACC Entities have filed a complaint against Bart

4  Street, III, LLC and Solutionary, Inc.   A copy of the First Amended Complaint is attached hereto

5  as **Exhibit A.**

6      19.     **The above Declaration is true and correct to the best of my knowledge and**

7  **belief under penalty of perjury of the laws of the State of Nevada.**

8      **DATED this 2st day of March, 2017.**

9

10

11              _____/s/ Howard Misle_____
                **HOWARD MISLE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT A

# EXHIBIT A

**COMP**
FENNEMORE CRAIG, P.C.
Mark Hawkins, Esq. (NV No. 8490)
Brenoch R. Wirthlin, Esq. (NV No. 10282)
300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
Facsimile: (702) 690-8099
E-mail: mhawkins@fclaw.com
       bwirthlin@fclaw.com
*Attorneys for Plaintiffs*

FILED
FIFTH JUDICIAL DISTRICT COURT

FEB 24 2017

NYE COUNTY DEPUTY CLERK
DEPUTY

**FIFTH JUDICIAL DISTRICT COURT**

**NYE COUNTY, NEVADA**

| | |
|---|---|
| ACC INDUSTRIES, INC., a Nevada corporation; ACC ENTERPRISES, LLC a Nevada limited liability company; and CALVADA PARTNERS, LLC, a Nevada limited liability company, | Case No.: CV38198 <br><br> Dept. No.: 2 |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT** |
| BART STREET II, LLC, a Nebraska limited liability company; SOLUTIONARY, INC., a Nevada Corporation; DOE INDIVIDUALS 1-25 and ROE COMPANIES 26-50, | **[Exempt from Arbitration – Amount in Controversy Exceeds $50,000]** |
| Defendants. | |

For their Complaint against the Defendants, Plaintiffs ACC Industries, Inc., a Nevada corporation ("ACC Industries"), ACC Enterprises, LLC, a Nevada limited liability company ("ACC Enterprises"), and Calvada Partners, LLC, a Nevada limited liability company ("Calvada Partners" and collectively with ACC Industries and ACC Enterprises referred to herein as "Plaintiffs"), by and through their counsel of record, Fennemore Craig, P.C., hereby allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1.    ACC Industries is a Nevada corporation and has its principal places of business in Pahrump, Nevada.

2.    ACC Enterprises is a Nevada limited liability company and has its principal places of business in Pahrump, Nevada.

12631752/041982.0003

1        3.     Calvada Partners is a Nevada limited liability company and has its principal places

2 of business in Pahrump, Nevada.

3        4.     On information and belief, Defendant Bart Street III, LLC ("Bart Street") is a

4 Nebraska limited liability company with its principal place of business in Nebraska.

5        5.     On information and belief, Defendants Solutionary, Inc. ("Solutionary"), is a

6 Nevada corporation.  Bart Street and Solutionary shall be referred to herein as "Defendants".

7        6.     Plaintiffs do not know the true names and capacities of Defendants sued herein as

8 DOE DEFENDANTS 1-25, inclusive; and ROE COMPANIES 26-50, inclusive, and therefore

9 sue these Defendants by such fictitious names.  Plaintiffs are informed and believed, and

10 thereupon allege, that each of these so fictitiously named Defendants is responsible in some

11 manner for the allegations and damages set forth herein.  Plaintiffs will amend or seek leave to

12 amend as necessary this Complaint when the true names and capacities of such Defendants are

13 ascertained

14        7.     Venue and jurisdiction are appropriate in this Court pursuant to NRS 13.040 and

15 the amount in controversy exceeds the jurisdictional limit of this Court.

16                                **GENERAL ALLEGATIONS**

17        8.     Plaintiffs own and operate a marijuana cultivation plant in Pahrump, Nevada.

18        9.     In order to fund operations of Plaintiffs' business, ACC Industries entered into that

19 certain loan agreement with a lender Beverly Pacific ("BP") in the amount $2,000,000 on or

20 around March 15, 2016 ("March 2016 Loan").

21       10.     Pursuant to the terms of the March 2016 Loan, which is evidenced by that certain

22 promissory note of the same date, ACC Industries is required to repay the amounts received

23 pursuant to the March 2016 Loan on September 15, 2017.

24       11.     Because Plaintiffs needed additional funding to grow their business, Plaintiffs

25 entered into negotiations with Bart Street for additional capital to fund their Pahrump business.

26       12.     On information and belief, Steve Idelman ("Idelman"), the principal of Bart Street

27 is a friend of the family member of Howard Misle ("Misle"), the President of ACC Industries.

28       13.     Because of the close relationship between Misle and Idelman, Plaintiffs had the

1  right to expect trust and confidence in the integrity and fidelity of Idelman pursuant to the

2  resulting fiduciary relationship between Plaintiffs and Defendants.

3      14.    After substantial negotiation, Plaintiffs and Defendants entered into an agreement

4  pursuant to which Bart Street and a Nevada entity which he controlled or operated agreed to fund

5  Plaintiffs' business in the total principal amount of $9,000,000.

6      15.    While Idelman never mentioned the name of the Nevada entity that would be

7  participating in the parties' agreement, on information and belief that entity may have been

8  Solutionary.

9      16.    Because recreational marijuana was not permitted in Nevada at the time of the

10  parties' negotiations, and because the parties believed there was a substantial likelihood that

11  recreational marijuana would be approved in Nevada in November, 2016, the parties agreed that

12  Bart Street would lend Plaintiffs $4,700,000 prior to the vote in November, 2016 regarding

13  recreational marijuana and the remaining $4,300,000 would be provided in the form of equity

14  after the vote in November, 2016, provided the vote approved the sale and distribution of

15  recreational marijuana in Nevada.  Additionally, if the vote passed, it was also understood that the

16  loan of $4,700,000 would be converted into equity as well or at a minimum $1,300,000 for a total

17  of $6,000,000 in equity and $3,000,000 in loans.

18      17.    On or around August 19, 2016, Plaintiffs ACC  Industries, ACC Enterprises, and

19  Bart Street entered into that certain Promissory Note in Las Vegas, Nevada in the amount of

20  $3,500,000 ("August 2016 Note").  Pursuant to the terms of the August 2016 Note, Defendant

21  agreed to lend and Plaintiffs ACC Industries and ACC Enterprises agreed to borrow the sum of

22  $3,500,00 for use in their business.  A copy of the August 2016 Note is attached hereto as **Exhibit**

23  **1**.

24      18.    Pursuant to the terms of the August 2016 Note, the outstanding principal amount

25  of the note, together with all accrued interest, is due and payable on September 1, 2017.  *See*

26  Exhibit 1 at ¶ 1.

27      19.    Further, the only events which constitute default under the August 2016 Note as

28  provided in the note itself are failure to repay the note, Plaintiffs' filing a petition in bankruptcy,

1    or an involuntary bankruptcy petition filed against Plaintiffs. *Id.* at ¶ 5.

2        20.    The August 2016 Note also provides that it shall be governed by and construed

3    under the laws of the State of Nevada. *Id.* at ¶ 9.

4        21.    Pursuant to the terms of the August 2016 Note, Plaintiffs were originally planning

5    to use $2,200,000 of the August 2016 Note to pay off BP's remaining debt.

6        22.    However, subsequent to the execution of the August 2016 Note, the parties agreed

7    that Plaintiffs would instead convert BP's debt to equity in the Plaintiffs' company, and would

8    instead use the $2,200,000 previously intended to pay off BP as working capital for the Plaintiffs'

9    company.

10       23.    Defendants were fully and completely informed of this modification to the parties

11    agreement and agreed, verbally and through email correspondence, to this change.

12       24.    On information and belief, Defendants knew or believed that this representation

13    was false.

14       25.    On information and belief, Defendants intended that Plaintiffs rely on Defendants'

15    false representations.

16       26.    Defendants intended to induce Plaintiffs to act or refrain from acting upon

17    Defendants' misrepresentations.

18       27.    Further, Plaintiffs did in fact justifiably rely on Defendants' false representations

19    and converted BP's debt to equity in Plaintiffs' company so they could use the $2,200,000

20    previously intended to pay off BP as working capital for the Plaintiffs' company.

21       28.    On or around September 6, 2016, Plaintiffs and Bart Street entered into that certain

22    Promissory Note in Las Vegas, Nevada in the amount of $1,200,000 ("September 2016 Note").

23    Pursuant to the terms of the September 2016 Note, Bart Street agreed to lend and Plaintiffs agreed

24    to borrow the sum of $1,200,000 for use in their business. A copy of the September 2016 Note is

25    attached hereto as **Exhibit 2**.

26       29.    Pursuant to the terms of the September 2016 Note, the outstanding principal

27    amount of the note, together with all accrued interest, is due and payable on September 1, 2017.

28    *See* Exhibit 2 at ¶ 1.

30.     Further, the only events which constitute default under the September 2016 Note as provided in the note itself are failure to repay the note, Plaintiffs' filing a petition in bankruptcy, or an involuntary bankruptcy petition filed against Plaintiffs. *Id.* at ¶ 5.

31.     The September 2016 Note also provides that it shall be governed by and construed under the laws of the State of Nevada. *Id.* at ¶ 9.

32.     Subsequently, in November, 2016, the use, production and distribution of recreational marijuana was approved in Nevada.

33.     Pursuant to the terms of the parties' agreement, Plaintiffs anticipated Bart Street and/or Solutionary would provide the additional $4,300,000 in funding to Plaintiffs they were contractually obligated to provide.

34.     However, in violation of their contractual agreement with Plaintiffs, Bart Street and Solutionary have failed and refused to provide said additional funding, to the detriment and damage of Plaintiffs.

35.     Further, on information and belief, to avoid complying with their obligations pursuant to the parties' agreement, Bart Street and Solutionary have falsely alleged that Plaintiffs have breached the notes and have further unlawfully demanded that the amounts owed be repaid immediately, despite the fact that the notes are not yet due or payable and no breach of the notes by Plaintiffs has occurred.

36.     34.     On information and belief, Defendants knew or believed that this representation was false.

37.     Despite Plaintiffs' attempts to resolve this matter, Defendants have failed and refused to honor their obligations under the parties' agreement and Plaintiffs have been required to engage the services of an attorney to commence this action, and therefore is entitled to their reasonable attorneys' fees and costs incurred pursuant to applicable law.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

38.     Plaintiffs incorporate by reference all of the allegations contained in this Complaint as though fully set forth herein.

39.   Plaintiffs and Defendants entered into that certain agreement, as set forth herein.

40.   Defendants have breached their obligations under the agreement, as set forth herein.

41.   As a proximate cause of Defendants' breaches, Plaintiffs have been damaged in an amount in excess of $15,000.00, and on information and belief Plaintiffs' damages include but are not limited to the additional $4,300,000 in funding Defendants were contractually obligated to provide as well as potentially in excess of $30,000,000 per year in lost profits and other general, consequential, and other damages, all of which Plaintiffs claim and are seeking in this lawsuit. The exact amount of Plaintiffs' damages will be determined at trial in this matter, as set forth herein.

42.   Despite Plaintiffs' attempts to resolve this matter, Defendants have failed and refused to honor its obligations under the parties' agreement and Plaintiffs have been required to engage the services of an attorney to commence this action, and therefore is entitled to their reasonable attorneys' fees and costs incurred pursuant to applicable law.

43.   WHEREFORE Plaintiffs pray for relief as set forth herein.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

44.   Plaintiffs incorporate by reference all of the allegations contained in this Complaint as though fully set forth herein.

45.   It is well settled in Nevada that "every contract imposes upon the contracting parties the duty of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (1993).

46.   Plaintiffs and Defendants entered into that certain agreement, as set forth herein.

47.   Defendants owe Plaintiffs duties of good faith and fair dealing.

48.   Plaintiffs have fully performed their obligations under the parties' agreement, as set forth herein.

49.   Defendants have breached his obligations under the parties' agreement, as set forth herein.

50. Plaintiffs' justified expectations under the agreement were thus denied.

51. As a proximate cause of Defendants' breaches, Plaintiffs have been damaged in an amount in excess of $15,000.00, and on information and belief Plaintiffs' damages include but are not limited to the additional $4,300,000 in funding Defendants were contractually obligated to provide as well as potentially in excess of $30,000,000 per year in lost profits and other general, consequential, and other damages, all of which Plaintiffs claim and are seeking in this lawsuit. The exact amount of Plaintiffs' damages will be determined at trial in this matter, as set forth herein.

52. Despite Plaintiffs' attempts to resolve this matter, Defendants have failed and refused to honor its obligations under the parties' agreement and Plaintiffs have been required to engage the services of an attorney to commence this action, and therefore is entitled to their reasonable attorneys' fees and costs incurred pursuant to applicable law.

53. WHEREFORE Plaintiffs pray for relief as set forth herein.

### THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

54. Plaintiffs incorporate by reference all of the allegations contained in this Complaint as though fully set forth herein.

55. Defendants owed a fiduciary duty to Plaintiffs, as set forth herein.

56. Defendants breached that duty, as set forth herein.

57. Defendants are guilty of oppression, fraud or malice, express or implied, as set forth herein.

58. As a proximate cause of Defendants' breaches, Plaintiffs have been damaged in an amount in excess of $15,000.00, and on information and belief Plaintiffs' damages include but are not limited to the additional $4,300,000 in funding Defendants were contractually obligated to provide as well as potentially in excess of $30,000,000 per year in lost profits and other general, consequential, and other damages, all of which Plaintiffs claim and are seeking in this lawsuit. The exact amount of Plaintiffs' damages will be determined at trial in this matter, as set forth herein.

59.   Accordingly, because Defendants are guilty of oppression, fraud or malice, express or implied, Plaintiffs are entitled to punitive damages, in addition to, without limitation, general damages, compensatory damages, and lost profits, as set forth herein.

60.   Despite Plaintiffs' attempts to resolve this matter, Defendants have failed and refused to honor their obligations under the parties' agreement and Plaintiffs have been required to engage the services of an attorney to commence this action, and therefore is entitled to their reasonable attorneys' fees and costs incurred pursuant to applicable law.

61.   WHEREFORE Plaintiffs pray for relief as set forth herein.

## FOURTH CAUSE OF ACTION
### (Fraudulent or Intentional Misrepresentation)

62.   Plaintiffs incorporate by reference all of the allegations contained in this Complaint as though fully set forth herein.

63.   Defendants made false representations, as set forth herein.

64.   Defendants knew or believed that these representations were false, as set forth herein.

65.   Defendants intended that Plaintiffs rely on Defendants' false representations, as set forth herein.

66.   Defendants intended to induce Plaintiffs to act or refrain from acting upon Defendants' misrepresentations, as set forth herein.

67.   Further, Plaintiffs did in fact justifiably rely on Defendants' false representations as set forth herein.

68.   As a proximate cause of Defendants' breaches, Plaintiffs have been damaged in an amount in excess of $15,000.00, and on information and belief Plaintiffs' damages include but are not limited to the additional $4,300,000 in funding Defendants were contractually obligated to provide as well as potentially in excess of $30,000,000 per year in lost profits and other general, consequential, and other damages, all of which Plaintiffs claim and are seeking in this lawsuit. The exact amount of Plaintiffs' damages will be determined at trial in this matter, as set forth herein.

FENNEMORE CRAIG, P.C.
LAS VEGAS

69.     Defendants are guilty of oppression, fraud or malice, express or implied, as set forth herein.

70.     Accordingly, because Defendants are guilty of oppression, fraud or malice, express or implied, Plaintiffs are entitled to punitive damages, in addition to, without limitation, general damages, compensatory damages, and lost profits, as set forth herein.

71.     Despite Plaintiffs' attempts to resolve this matter, Defendants have failed and refused to honor their obligations under the parties' agreement and Plaintiffs have been required to engage the services of an attorney to commence this action, and therefore is entitled to their reasonable attorneys' fees and costs incurred pursuant to applicable law.

72.     WHEREFORE Plaintiffs pray for relief as set forth herein.

## FIFTH CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

73.     Plaintiffs incorporate by reference all of the allegations contained in this Complaint as though fully set forth herein.

74.     An actual, existing and justiciable controversy has arisen and exists between Plaintiffs and Defendants, as set forth herein.

75.     Wherefore, Plaintiffs pray for declaratory and/or injunctive relief to be entered in their favor and against Defendants pursuant to, among other law, NRS Chapter 30 for a judicial determination and declaration including but not limited to the following:

    i.     That a valid agreement existed between Plaintiffs and Defendants, as set forth herein.

    ii.    That Defendants were aware of, and consented to, Plaintiffs' actions, including but not limited to, regarding converting BP's debt to equity, as set forth herein.

    iii.   That Defendants breached their agreement with Plaintiffs by failing to provide the additional $4,300,000 after passage of the law approving recreational marijuana in Nevada.

    iv.    Such other and further relief as the Court deems proper.

76.     Despite Plaintiffs' attempts to resolve this matter, Defendants have failed and

refused to honor their obligations under the parties' agreement and Plaintiffs have been required to engage the services of an attorney to commence this action, and therefore is entitled to their reasonable attorneys' fees and costs incurred pursuant to applicable law.

77.     WHEREFORE Plaintiffs pray for relief as set forth herein.

## SIXTH CAUSE OF ACTION
### (Specific Performance)

78.     Plaintiffs incorporate by reference all of the allegations contained in this Complaint as though fully set forth herein.

79.     Plaintiffs and Defendants entered into that certain agreement, as set forth herein.

80.     Defendants have breached their obligations under the agreement, as set forth herein.

81.     Plaintiffs have standing and are entitled to specifically enforce the agreement between Plaintiffs and Defendants, as set forth herein.

82.     Plaintiffs have complied with all of their obligations under the parties' agreement.

83.     Plaintiffs' remedy at law is inadequate.

84.     Plaintiffs request that the Defendants' obligations be specifically enforced, as set forth herein.

85.     Despite Plaintiffs' attempts to resolve this matter, Defendants have failed and refused to honor its obligations under the parties' agreement and Plaintiffs have been required to engage the services of an attorney to commence this action, and therefore is entitled to their reasonable attorneys' fees and costs incurred pursuant to applicable law.

86.     WHEREFORE Plaintiffs pray for relief as set forth herein.

**WHEREFORE**, Plaintiffs, expressly reserving the right to amend this Complaint to insert those parties, elements and items of damages as yet unascertained, or according to proof at trial, respectfully prays for the following relief against Defendants as follows:

A.     For judgment to be entered in its favor and against Defendants awarding damages, including but not limited to, general,  compensatory, and consequential, damages, including but

1   not limited to lost profits, in excess of $15,000 and not less than the principal amount of

2   $4,300,000, the exact amount to be proven at trial;

3         B.      For punitive damages, as set forth herein;

4         C.      For declaratory and/or injunctive relief to be entered in their favor and against

5   Defendants pursuant to, among other law, NRS Chapter 30 for a judicial determination and

6   declaration including but not limited to the following:

7               i.     That a valid agreement existed between Plaintiffs and Defendants, as set forth

8                      herein.

9               ii.    That Defendants were aware of, and consented to, Plaintiffs' actions, including but

10                     not limited to, regarding converting BP's debt to equity, as set forth herein.

11              iii.   That Defendants breached their agreement with Plaintiffs by failing to provide the

12                     additional $4,300,000 after passage of the law approving recreational marijuana in

13                     Nevada.

14              iv.    Such other and further relief as the Court deems proper.

15        D.      For specific performance of the parties' agreement, as set forth herein;

16        E.      For pre-judgment and post-judgment interest on all damage amounts awarded as

17  allowable under law or by virtue of the agreement at issue;

18        F.      For an award of all reasonably expended attorneys' fees and costs of suit; and

19        G.      For such other relief as the Court may deem just and proper.

20  DATED this 24 day of February, 2017.

21

22                                          FENNEMORE CRAIG

23

24                                          By: _____
                                               Mark A. Hawkins (NV Bar No. 8490)
25                                             Brenoch Wirthlin (NV Bar No. 10282 )
                                               300 S. Fourth Street, Suite 1400
26                                             Las Vegas, Nevada 89101
                                               *Attorneys for Plaintiffs*
27

28

# EXHIBIT "1"

# EXHIBIT "1"

PROMISSORY NOTE

$3,500,000.00

August 19, 2016
Las Vegas, Nevada

FOR VALUE RECEIVED, ACC INDUSTRIES, INC., a Nevada Corporation; and ACC ENTERPRISES, LLC, a Nevada Limited Liability Company; (both herein collectively referred to as "Borrower"), promise to pay to BART STREET III, LLC, a Nebraska Limited Liability Company, or its assigns ("Holder") the principal sum of Three Million Five Hundred Thousand and 00/100 Dollars ($3,500,000.00), together with accrued and unpaid interest thereon, each due and payable on the date and in the manner set forth below; it being the fact that an initial sum of $1,500,000.00 of the total $3,500,000.00 has been advanced on the effective date hereof of August 19, 2016 and this Note is intended to memorialize that previous advance and with the promise to advance the balance referred to herein in accordance with all of the terms and provisions herein provided. The principal amount shall include an amount of Twenty-Five Thousand and 00/100 Dollars ($25,000.00) to be paid to Holder in satisfaction of all due diligence expenses incurred to date.

The final advances under this Note are outlined herein and are subject to all formal releases and acknowledgments of full and complete payment as follows:

$725,000.00 to Borrower as Operating Capital;

$25,000.00 to Holder as due diligence costs;

$2,200,000.00 to Beverly Pacific, LLC;

$275,000.00 to Insight Medica, LLC;

$275,000.00 to Hill Health, LLC;

For a total loan amount of $3,500,000.00

1. **Repayment.** All payments of interest and principal shall be in lawful money of the United States of America. All payments shall be applied first to accrued interest, and thereafter to principal. The outstanding principal amount of this Note, together with all accrued interest, shall be due and payable on the September 1, 2017 (the "Maturity Date").

2. **Interest Rate.** The Borrower promises to pay simple interest on the advanced and outstanding principal amount hereof from the effective date hereof until payment in full, which interest shall accrue at the rate of (a) seven percent (7%) per annum until paid. Interest shall be due and payable on the Maturity Date and shall be calculated on the basis of a 365-day year for the actual number of days elapsed.

3. **Maturity.** Unless this Note has been previously demanded in accordance with the terms

of Section 1 above, the entire outstanding principal balance and all unpaid accrued interest shall become fully due and payable on the Maturity Date.

4.  **Prepayment.** The Borrower shall have the right to prepay this Note and any accrued interest due prior to the Maturity Date without the consent of the Holder and without payment of any prepayment penalty.

5.  **Default.** If there shall be any event of default hereunder, at the option and upon written notice to the Borrower, this Note shall accelerate and all principal and unpaid accrued interest shall become due and payable. The occurrence of any one or more of the following shall constitute an event of default:

a.      The Borrower fails to pay timely any of the principal amount due under this Note on the date the same becomes due and payable or any accrued interest or other amounts due under this Note on the date the same becomes due and payable;

b.      The Borrower files any petition or action for relief under any bankruptcy, reorganization, insolvency or moratorium law or any other law for the relief of, or relating to, debtors, now or hereafter in effect, or makes any assignment for the benefit of creditors or takes any corporate action in furtherance of any of the foregoing;

c.      An involuntary petition is filed against the Borrower (unless such petition is dismissed or discharged within sixty (60) days under any bankruptcy statute now or hereafter in effect, or, a custodian, receiver, trustee, assignee for the benefit of creditors (or other similar official) is appointed to take possession, custody or control of any property of the Borrower; or

6.  **Default Interest.** The Borrower agrees that time is of the essence and that in the event payment of principal and interest due under this Note is not made when due, the outstanding principal balance and accrued interest hereunder shall immediately bear interest at the then maximum rate of interest allowable under the law.

7.  **Waiver.** Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

8.  **Expenses.** If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the Borrower promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the collateral securing this Note or the enforcement of any guaranty hereof incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall, include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in any way affects the exercise by the holder hereof of

2

its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note. As used herein, "actual attorneys' fees" or "attorneys' fees actually incurred" means the full and actual cost of any legal services actually performed in connection with the matter for which such fees are sought calculated on the basis of the usual fees charged by the attorneys performing such services, and shall not be limited to "reasonable attorneys' fees" as that term may be defined in statutory or decisional authority.

9.   **Governing Law.** This Note shall be governed by and construed under the laws of the State of Nevada, as applied to agreements among Nevada residents, made and to be performed entirely within the State of Nevada, without giving effect to conflicts of laws principles.

10. **Modification; Waiver.** No single or partial exercise of any power hereunder or under any mortgage, deed of trust, security agreement or other agreement securing this Note shall preclude other or further exercise thereof or the exercise of any other power. No delay or omission on the part of the holder hereof in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note. The release of any party liable on this Note shall not operate to release any other party liable hereon. The acceptance of any amount due and payable hereunder shall not operate as a waiver with respect to any other amount then owing and unpaid.

11. **Assignment.** This Note may be transferred only upon its surrender to the Borrower for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Borrower. Thereupon, this Note shall be reissued to, and registered in the name of, the transferee, or a new Note for like principal amount and interest shall be issued to, and registered in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Borrower's obligation to pay such, interest and principal.

12. **Right of First Refusal.** During the period of time that there is any outstanding principal or interest due under this Note, at the option of the Holder, the Holder shall have a First Right of Refusal to participate and obtain fully paid and non-assessable Units or Shares of either or both ACC INDUSTRIES, INC. and ACC ENTERPRISES, LLC.

ACC INDUSTRIES, INC.,
A Nevada Corporation


By: _Pete Seltzer_

Name: _Pete Seltzer_

Title: _CO MANAGING Partner_


ACC ENTERPRISES, LLC,

3

its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note. As used herein, "actual attorneys' fees" or "attorneys' fees actually incurred" means the full and actual cost of any legal services actually performed in connection with the matter for which such fees are sought calculated on the basis of the usual fees charged by the attorneys performing such services, and shall not be limited to "reasonable attorneys' fees" as that term may be defined in statutory or decisional authority.

9.  **Governing Law.** This Note shall be governed by and construed under the laws of the State of Nevada, as applied to agreements among Nevada residents, made and to be performed entirely within the State of Nevada, without giving effect to conflicts of laws principles.

10. **Modification; Waiver.** No single or partial exercise of any power hereunder or under any mortgage, deed of trust, security agreement or other agreement securing this Note shall preclude other or further exercise thereof or the exercise of any other power. No delay or omission on the part of the holder hereof in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note. The release of any party liable on this Note shall not operate to release any other party liable hereon. The acceptance of any amount due and payable hereunder shall not operate as a waiver with respect to any other amount then owing and unpaid.

11. **Assignment.** This Note may be transferred only upon its surrender to the Borrower for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Borrower. Thereupon, this Note shall be reissued to, and registered in the name of, the transferee, or a new Note for like principal amount and interest shall be issued to, and registered in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Borrower's obligation to pay such interest and principal.

12. **Right of First Refusal.**  During the period of time that there is any outstanding principal or interest due under this Note, at the option of the Holder, the Holder shall have a First Right of Refusal to participate and obtain fully paid and non-assessable Units or Shares of either or both ACC INDUSTRIES, INC. and ACC ENTERPRISES, LLC.

ACC INDUSTRIES, INC.,
A Nevada Corporation

By: _Pete Seltzer_

Name: _Pete Seel_

Title: _CO MANAGING Partner_

ACC ENTERPRISES, LLC,

3

A Nevada Limited Liability Company

By: _____

Name: _____HOWARD TWISLC_____

Title: _____CO - MANAGER_____

4

# EXHIBIT "2"

# EXHIBIT "2"

PROMISSORY NOTE

$1,200,000.00                                                    September 6, 2016
                                                                Las Vegas, Nevada

FOR VALUE RECEIVED, ACC INDUSTRIES, INC., a Nevada Corporation; ACC
ENTERPRISES, LLC, a Nevada Limited Liability Company; and Calvada Partners, LLC, a
Nevada Limited Liability Company (all herein collectively referred to as "Borrower"), promise to
pay to BART STREET III, LLC, a Nebraska Limited Liability Company, or its assigns ("Holder")
the principal sum of One Million Two Hundred Thousand and 00/100 Dollars ($1,200,000.00),
together with accrued and unpaid interest thereon, each due and payable on the date and in the
manner set forth below, in accordance with all of the terms and provisions herein provided.

The advances under this Note are outlined herein and are subject to all formal releases and
acknowledgments of full and complete payment as follows:

$500,000.00 to acquire Parcel #040-041-35, commonly known as 1241 E. Calvada
Blvd., Pahrump, Nye County, Nevada

$700,000.00 to acquire Parcel #040-041-34, commonly known as 1261 E. Calvada
Blvd., Pahrump, Nye County, Nevada

1.  **Repayment.** All payments of interest and principal shall be in lawful money of the
United States of America. All payments shall be applied first to accrued interest, and thereafter to
principal. The outstanding principal amount of this Note, together with all accrued interest, shall
be due and payable on September 1, 2017; (the "Maturity Date").

2.  **Interest Rate.** The Borrower promises to pay simple interest on the advanced and
outstanding principal amount hereof from the effective date hereof until payment in full, which
interest shall accrue at the rate of a three percent (3%) per annum until paid. Interest shall be due
and payable on the Maturity Date and shall be calculated on the basis of a 365-day year for the
actual number of days elapsed.

3.  **Maturity.** Unless this Note has been previously demanded in accordance with the terms of
Section 1 above, the entire outstanding principal balance and all unpaid accrued interest shall
become fully due and payable on the Maturity Date.

4.  **Prepayment.** The Borrower shall have the right to prepay this Note and any accrued
interest due prior to the Maturity Date without the consent of the Holder and without payment of
any prepayment penalty.

5.  **Default.** If there shall be any event of default hereunder, at the option and upon written
notice to the Borrower, this Note shall accelerate and all principal and unpaid accrued interest shall

become due and payable. The occurrence of any one or more of the following shall constitute an event of default:

      a.     The Borrower fails to pay timely any of the principal amount due under this Note on the date the same becomes due and payable or any accrued interest or other amounts due under this Note on the date the same becomes due and payable;

      b.     The Borrower files any petition or action for relief under any bankruptcy, reorganization, insolvency or moratorium law or any other law for the relief of, or relating to, debtors, now or hereafter in effect, or makes any assignment for the benefit of creditors or takes any corporate action in furtherance of any of the foregoing;

      c.     An involuntary petition is filed against the Borrower (unless such petition is dismissed or discharged within sixty (60) days under any bankruptcy statute now or hereafter in effect, or a custodian, receiver, trustee, assignee for the benefit of creditors (or other similar official) is appointed to take possession, custody or control of any property of the Borrower; or

6.  **Default Interest.** The Borrower agrees that time is of the essence and that in the event payment of principal and interest due under this Note is not made when due, the outstanding principal balance and accrued interest hereunder shall immediately bear interest at the then maximum rate of interest allowable under the law.

7.  **Waiver.** Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

8.  **Expenses.** If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the Borrower promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the collateral securing this Note or the enforcement of any guaranty hereof incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall, include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in any way affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note. As used herein, "actual attorneys fees" or "attorneys' fees actually incurred" means the full and actual cost of any legal services actually performed in connection with the matter for which such fees are sought calculated on the basis of the usual fees charged by the attorneys performing such services, and shall not be limited to "reasonable attorneys' fees" as that term may be defined in statutory or decisional authority.

9.  **Governing Law.** This Note shall be governed by and construed under the laws of the State of Nevada, as applied to agreements among Nevada residents, made and to be performed entirely within the State of Nevada, without giving effect to conflicts of laws principles.

10. **Modification; Waiver.** No single or partial exercise of any power hereunder or under any mortgage, deed of trust, security agreement or other agreement securing this Note shall preclude other or further exercise thereof or the exercise of any other power. No delay or omission on the part of the holder hereof in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note. The release of any party liable on this Note shall not operate to release any other party liable hereon. The acceptance of any amount due and payable hereunder shall not operate as a waiver with respect to any other amount then owing and unpaid.

11. **Assignment.** This Note may be transferred only upon its surrender to the Borrower for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Borrower. Thereupon, this Note shall be reissued to, and registered in the name of, the transferee, or a new Note for like principal amount and interest shall be issued to, and registered in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Borrower's obligation to pay such interest and principal.

12. **Right of First Refusal.** During the period of time that there is any outstanding principal or interest due under this Note, at the option of the Holder, the Holder shall have a First Right of Refusal to participate and obtain fully paid and non-assessable Units or Shares of either or both ACC INDUSTRIES, INC. and ACC ENTERPRISES, LLC.

ACC INDUSTRIES, INC.,
A Nevada Corporation

By: _Pete Setwed_

Name: _Pt I a_

Title: _CO-MANAGING Partner_

ACC ENTERPRISES, LLC,
A Nevada Limited Liability Company

By: _____

Name: _____

Title: _____

Calvada Partners, LLC,

3

A Nevada Limited Liability Company

By: _Pete Seltzer_
Name: _Pet Seltzer_
Title: _CO-Managing Partner_

By: _Howard Mish_
Name: _Howard Mish_
Title: _CO-Manager_

4

# EXHIBIT 2

# EXHIBIT 2

Re: ACG LA projections and ACC NV projections

Tuesday, July 12, 2016 7:27 PM
 Mark as Unread

**From:**

"Steven Idelman" <steveidelman@yahoo.com>

**To:**

"peteseltzer" <peteseltzer@yahoo.com>

**Cc:**

"Howard Misle" <hmisle@aol.com>

Full Headers Printable View

Thanks Pete, appreciated & will await the revised document.

Best,
Steve

Steve Idelman
steveidelman@solutionary.com
office phone:  402.361.3005
cell phone:  402.680.5000

Please excuse typos
Sent from my iPad

On Jul 12, 2016, at 6:58 PM, peteseltzer <peteseltzer@yahoo.com> wrote:

Hi Steve.

I am at airport in Vegas heading back to la now. I was with howard today when you talked about the proforma. Hopefully you saw the attachment now for pahrump i did.

That being said, I must revise it tomorrow to include our vision of building out additional buildings and the revenue from buildings D and E.

I will do that and the LA one and get to you no later than 24 hrs.  I also will get you our Pahrump business structure and all contracts tomorrow. It is extensive and all lawyered up in final form.

The business structure will be sent to you tomorrow as well.

My best

Pete

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Steven Idelman <steveidelman@yahoo.com>
Date: 7/8/16 4:13 PM (GMT-08:00)
To: Pete Seltzer <peteseltzer@yahoo.com>
Cc: hmisle@aol.com
Subject: Re: ACG LA projections and ACC NV projections

Pete,

Thank you, no worries.  Will get back to you and Howard next week.  Enjoy your rafting date & have a great weekend.

Howard, thanks again & you too have a great weekend.

Steve Idelman
steveidelman@solutionary.com
office phone:  402.361.3005
cell phone:  402.680.5000

Please excuse typos
Sent from my iPad

> On Jul 8, 2016, at 10:37 AM, Pete Seltzer <peteseltzer@yahoo.com> wrote:
>
> Steve
>
> sorry I didn't get you this last eve.  I took my son to Breckenridge yesterday and our hotel business center had the internet down all night.
>
> Attached is LA building projections based on two rev streams.
>   1. all flower at $2500lb based on 5 cycles = $20.4 mil annual Rev net after expected expenses with an average of about $500lb
>   2. all Blunt Box at $68per box which is $13.6 per gram or $6,160lb.  = $57.8 mil annual Rev net after expected expenses with an avg. $500lb
>
> I based it on keeping rooms 2-5 single tiered and building out rooms 1, 6,7 and 8 double tiered.  If we retrospectively added double tiers too rooms 2-5 the revs double in these rooms as well.
>
> Calif has announced it will offer a 22,000sq ft. indoor canopy license come 2018 should recreational pass this Nov of 2016. We will be well within that 22,000sq ft. of canopy

> For ACC Enterprises in Pahrump I have attached our comprehensive plan involving all 3 buildings.
> Attached is Pahrump buildings projections based on multi rev streams
>   1. 10% equity in Building B skate zone which is at first rev in 2 weeks
>   2. 20% equity in Building C Sears building
>   3. 30% equity in Building A Furniture building

> I based it current rate of $3200 lb. flower and went lower as completion ramps up in 2020. I also used our same Blunt Box at $68per box which is $13.6 per gram or $6,160lb.  = $57.8 mil annual Rev net after expected expenses with an avg. $500lb
>
> I also used 70% of all sales being blunt which is obviously a guesstimate presently but we are the only ones in the market out of 33 cultivators with this marketing strategy.
>
> * Our Pahrump set up calls for Misle, Seltzer and our main group to create a building management company that manages all 3 buildings and gets 20% of net rev after expenses. Your share would be 20%  {Calvada management}
>
> * Our Pahrump set up calls for Misle, Seltzer and our main group to create a building real est. company that manages all 3 buildings and gets applicable market rent. Your share would be 20% {Calvada Partners}
>
> * Our Pahrump set up calls for Misle, Seltzer and our main group to create a Blunt Box company that manages all 3 buildings and gets applicable market price above and beyond going flower rate. Your share would be 20%
>
> Thus you will get stated equity as listed in numbers 1-3 and also 20% of rent, management fees and blunt box fees above the flower price

> {see brand IP Company P&L page} note this was all made in early 2016 so we are already past building B build out phase . Your total revenues are actually out of total rev line with blunt sales so the possibilities are vast.

> If you have any questions or should we get to that point, I can provide ready-made legal contracts of every building, real estate company, management co and any detail you need.

> Off to take my son rafting...

> Best

> Pete Seltzer

> <Copy of Master Copy of ACG LA Analysis (1.7lb per light Ju 8 16).xlsx>
> <Project Green Pahrump Pro Forma Analysis_v.07 (5.18.16) - ACC.xlsx>

Re: court ruling supports marijuna today

Thursday, August 18, 2016 4:24 AM

From:

"Steven Idelman" <steveidelman@yahoo.com>

To:

"Pete Seltzer" <peteseltzer@yahoo.com>

Cc:

"Sean Mullen" <smullen@hancockdana.com> "hmisle@aol.com"
<hmisle@aol.com> "stevenmarsh25@yahoo.com"
<stevenmarsh25@yahoo.com> "mark hawkins" <mhawkins@fclaw.com>

Awesome!!!!!  Truly excellent news.

Steve Idelman
steveidelman@solutionary.com
office phone:  402.361.3005
cell phone:  402.680.5000

Please excuse typos
Sent from my iPad

> On Aug 17, 2016, at 11:48 PM, Pete Seltzer <peteseltzer@yahoo.com> wrote:

> Gentlemen

> For the time being this is a major victor today for the medical marijuana community.  US Federal court
of Appeals ruled 3-0 that the federal gov't can't spend money to prosecute any individuals who are
compliant with the medicinal marijuana laws of states that permit medical marijuana growth and sales.

> This means we are safe growing and selling in NV, CA and 23 other states as long as we follow state
guidelines.

> However, the court did say that if Congress initiates a change in it's opinion on this law, that it could
change in the future and once again allow the Federal gov't to spend money to prosecute even in the
states that have legalized it.

> That being said, they were covering the backsides.  In Nov it is expected as many as 8 more states will
pass legal medical marijuana and up the total to 33 and that 5 more will legalize recreational. Thus the
country is unlikely to go backwards but instead its likely if we have a democratic congress that federal
laws will continue to lessen and eventually it will be decriminalized federally too in the next 4 years.

Regards,
Pete



Re: ACC update

Saturday, October 8, 2016 6:26 AM

**From:**

"Sean Mullen" <smullen@hancockdana.com>

**To:**

"Pete Seltzer" <peteseltzer@yahoo.com>

**Cc:**

"Steven Idelman" <steveidelman@yahoo.com> "hmisle@aol.com"
<hmisle@aol.com>

Full Headers Printable View

Thanks for the update.

Let me know where we are on delivering the originals of the promissory notes.

Sent from my iPhone

> On Oct 7, 2016, at 5:54 PM, Pete Seltzer <peteseltzer@yahoo.com> wrote:

> Steve/ Sean

> https://lasvegasweekly.com/news/2016/sep/29/burning-questions-marijuana-question-2-nevada/

> Burning questions: If Question 2 passes, how might Nevada's marijuana landscape look?

> On November 8, Nevadans will decide whether to legalize marijuana for recreational use. (The drug has
been legal for medicinal purposes since 2000, though the first regulated dispensaries didn't open here
until last year.) Debate continues over the merit of the recreational initiative—marijuana remains a
Schedule 1 drug at the federal level, and the DEA announced it would remain illegal for any purpose as
recently as August—but polling suggests Question 2 will pass. In July, a KTNV-TV 13 Action
News/Rasmussen poll had support at 50 percent, with 41 percent in opposition.
>
> With those numbers shifting by September to 53-39 in favor, it seems likely Nevada will join Colorado,
Oregon, Alaska and Washington state in legalizing recreational marijuana. What, exactly, will that mean
on the ground? Some of it's speculative at the moment, with the state legislature likely to work out details
in its upcoming sessions. Still, our reporters branched out to break down everything known and unknown,
for a primer we present here.
>
>
> Where will smoking be permitted?
>
> On private property, including front and backyards, but no-go on sidewalks or in parks—for now.
Nevada State Sen. Tick Segerblom, who helped lay groundwork for the state's medical marijuana
conditions during the 2013 state legislative session, says Nevada's "lenient" clean air regulations make it

"uniquely qualified" to allow cannabis consumption in certain public spaces, and that he hopes to move legislation to that end soon.

> Who will be able to purchase and smoke?

> Adults 21 and over with a valid U.S. ID or international passport verifying their age. As with alcohol, a person's criminal record won't be considered. "They just want to verify you're over 21," says Yes on 2 campaign spokesman Joe Brezny.

> Once legalized, how soon will marijuana become available for recreational use?

> Much as some might like to light up on November 9 (or, depending on the results of the presidential race, need to), it will take some time for legal cannabis to become widely available in Nevada—perhaps up to two years.

> "What I imagine is going to happen is that, after the vote, this will go to a legislative session in the spring," Bocskor says. "It's entirely possible that we could have regulations drafted and applications being accepted by August." Processing those applications will take time, as will setting up the businesses, stocking them with product and so on. The Nevada Legislature has very little room to hamstring legalization, however: "They have to follow the will of the voters," Bocskor says

> Where will it be available?

> As it now stands, the Division of Public and Behavioral Health regulates Nevada's medical marijuana dispensaries, while the Department of Taxation is set to regulate recreational marijuana—but that could change. "[Legalization is] a two-year process," Segerblom says. "In that time, we can change the law and put the medical program under Taxation, so that the same people will be regulating both."
>
> That means your local medical dispensary won't suddenly begin selling recreational weed this winter. But once the dust settles and recreational licenses are made available, current holders of medical marijuana licenses will be the first invited to apply for them. They'll still need to go through "a competitive licensing process," says Bocskor, who anticipates twice as many recreational licenses will be up for grabs than medical marijuana licenses were put on offer several years ago.

> WHAT DOES THIS ALL MEAN:

> 1. expected to pass recreational Nov 8, 2016
> 2. anyone over 21 can purchase with a drivers license
> 3. by Aug 2017 applications will be excepted but current medicinal license holders will be first invited to apply for recreational
> 4. will take months to process licenses and then set up businesses and get started. Thus medicinal cultivators wil lget big head start on new recreational license holders by several yrs.

> On Thu, 10/6/16, Steven Idelman <steveidelman@yahoo.com> wrote:

> Subject: Re: ACC update
> To: "Pete Seltzer" <peteseltzer@yahoo.com>
> Cc: "Sean Mullen" <smullen@hancockdana.com>, "hmisle@aol.com" <hmisle@aol.com>
> Date: Thursday, October 6, 2016, 3:38 PM
>
> Thanks Pete...truly great news.   Not much longer til the vote tames place.
>
> Steve Idelman
> steveidelman@solutionary.com
> office phone:  402.361.3005
> cell phone:  402.680.5000
>
> Please excuse typos Sent from my iPad


>> On Oct 6, 2016, at
> 3:52 PM, Pete Seltzer <peteseltzer@yahoo.com>wrote:
>>
>> http://lasvegassun.com/news/2016/sep/30/poll-nevada-voters-support-clinton-gun-measure-and/
>>
>>
>> http://www.suffolk.edu/news/67667.php#.V_a5cfaQl6Y
>>
>>
>> Poll done 9/30/16 just 6 days ago
>>
>> shows support for legalization perhaps increasing in NV

Re: ACC update

Thursday, October 6, 2016 2:38 PM
Mark as Unread

**From:**

"Steven Idelman" <steveidelman@yahoo.com>

**To:**

"Pete Seltzer" <peteseltzer@yahoo.com>

**Cc:**

"Sean Mullen" <smullen@hancockdana.com> "hmisle@aol.com"
<hmisle@aol.com>

Full Headers Printable View

Thanks Pete...truly great news.   Not much longer til the vote tames place.

Steve Idelman
steveidelman@solutionary.com
office phone:  402.361.3005
cell phone:  402.680.5000

Please excuse typos
Sent from my iPad

> On Oct 6, 2016, at 3:52 PM, Pete Seltzer <peteseltzer@yahoo.com> wrote:
>
> http://lasvegassun.com/news/2016/sep/30/poll-nevada-voters-support-clinton-gun-measure-and/
>
>
> http://www.suffolk.edu/news/67667.php#.V_a5cfaQI6Y
>
>
> Poll done 9/30/16 just 6 days ago
>
> shows support for legalization perhaps increasing in NV

Re: ACC update post election

Wednesday, November 9, 2016 8:20 AM
Mark as Unread

**From:**

"Steven Idelman" <steveidelman@yahoo.com>

**To:**

"Pete Seltzer" <peteseltzer@yahoo.com>

**Cc:**

"hmisle@aol.com" <hmisle@aol.com> "Sean Mullen"
<smullen@hancockdana.com>

Full Headers Printable View

Pete,

Thanks.  I understand Howard is out of the country so are you available for a quick call with me
please?  Shoot me your phone number and I will call you in a few minutes...just want to clarify something.

Thanks!

Best,
Steve

Steve Idelman
steveidelman@solutionary.com
office phone:  402.361.3005
cell phone:  402.680.5000

Please excuse typos
Sent from my iPad


> On Nov 9, 2016, at 10:11 AM, Pete Seltzer <peteseltzer@yahoo.com> wrote:
>
> Gentlemen
>
>
> I apologize for not being more available lately.  I have had some awful kidney stones that started
several weeks ago and still are kicking my butt.  We all have something in life that is our Achilles heel and
mine happens to be kidney stones about 2-3 times per year that often hospitalize me and certainly
debilitate me at the very least.
>
> That being said, I prepared two letters last week that would give a year in review / post election
synopsis of ACC and the projects.  I had our lawyer review both versions to make sure he was ok with
information being discussed.
>
> Fortunately, the kick ass version will be what is released soon.  As I am sure you know, the
Recreational legalization measure in NV passed overwhelmingly 54.1% - 45.9%. This was a surprisingly
large victory. This is indeed a game changer and puts many things into motion for ACC in 2017 - 2020 as

no new competition will be available until spring 2020.
>
> I will send you the ACC Management letter before the week is out once final editing is done.
>
> Best Regards
>
>
> Pete