**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BART STREET III, a Nebraska Limited Liability Company, | |
| Plaintiff, | Case No.: 2:17-cv-00083-GMN-VCF |
| vs. | **ORDER** |
| ACC ENTERPRISES, LLC, a Nevada Limited Liability Company; ACC INDUSTRIES, INC., a Nevada corporation; CALVADA PARTNERS, LLC, a Nevada Limited Liability Company; | |
| Defendants. | |

Pending before the Court is the Renewed Motion to Dismiss, (ECF No. 140), filed by Defendants ACC Enterprises, LLC ("ACC Enterprises"); ACC Industries, Inc. ("ACC Industries"); and Calvada Partners, LLC ("Calvada") (collectively "Defendants"). Plaintiff Bart Street III ("Plaintiff") filed a Response, (ECF No. 144), and Defendants filed a Reply, (ECF No. 146).

Also pending before the Court is Plaintiff's Motion for Summary Judgment. (ECF No. 142). Defendants filed a Response, (ECF No. 148), and Plaintiff filed a Reply, (ECF No. 153).

For the reasons discussed herein, Defendants' Renewed Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Further, Plaintiff's Motion for Summary Judgment in **DENIED as moot**.

**I.     BACKGROUND**

This case arises from an alleged breach of a multi-million-dollar loan agreement. Plaintiff is in the business of money lending, and Defendants are allegedly the owners and operators of a cannabis cultivation plant in Pahrump, Nevada. (*See* Compl. ¶¶ 13–33, 5:21–13 n.15); (Am. Operating Agreement at 2, Ex. 4 to Compl., ECF No. 1-4) (stating that ACC

Industries was "previously engaged in" a "cannabis cultivation business in Pahrump, Nevada," and ACC Enterprises "has succeeded to substantially all of the assets of . . . ACC Industries, Inc."). On August 19, 2016, Defendants executed a promissory note agreement with Plaintiff, which involved a loan of $3.5 million dollars ("First Promissory Note"). (Compl. ¶ 13). The parties soon after executed a second promissory note on September 6, 2016, for a loan of $1.2 million dollars ("Second Promissory Note"). (*Id.* ¶ 22). Defendants allegedly breached the terms of both promissory notes.

The First Promissory Note by Plaintiff was to ACC Industries and ACC Enterprises. (First Promissory Note at 2, Ex. 1 to Compl., ECF No. 1-1). This Note specified that Plaintiff would loan roughly $3.5 million dollars to ACC Industries and ACC Enterprises conditioned upon the funds being used in the following ways: (1) $725,000 as operating capital; (2) $25,000 to Plaintiff as due diligence costs; (3) $2.2 million to Beverly Pacific, LLC, as payment of a prior loan of ACC Industries and ACC Enterprises; (4) $275,000 to Insight Media, LLC; and (5) $275,000 to Hill Health, Inc. (Compl. ¶ 14); (First Promissory Note at 2, Ex. 1 to Compl.). Additionally, this Note had an interest rate of 7% per annum as well as a "right of first refusal to obtain fully paid and non-assessable units or shares[1] in [ACC Industries] or [ACC Enterprises]." (Compl. ¶ 21); (First Promissory Note at 2, 4, Ex. 1 to Compl.). The Note provided that all interest and the outstanding principal was due by September 1, 2017, after which ACC Enterprises and ACC Industries would be in default and Plaintiff could accelerate all owed principal amounts and interest to make it "immediately due and payable." (Compl. ¶ 18).

The Second Promissory Note of $1.2 million dollars was to all Defendants in this case, and it similarly included restrictions on how Defendants could use the funds. (*Id.* ¶¶ 22–30);

---

[1] Plaintiff's Complaint does not clearly define the term "non-assessable units or shares"; however, exhibits attached to and referenced in Plaintiff's Complaint define the term as "membership interests" or "ownership interests" in Defendants' business. (Compl. at 6:18–23 n.18; Am. Operating Agreement at 8, Ex. to Compl.).

(Second Promissory Note at 2; Ex. 2 to Compl., ECF No. 1-2). That is, the Note required Defendants to use the money to purchase two parcels of land in Nye County, Nevada—$500,000 to acquire land parcel #040-041-35; and $700,000 to acquire land parcel #040-041-34. (Compl. ¶ 22); (Second Promissory Note at 2, Ex. 2 to Compl.). Just as the First Promissory Note provided, the Second Promissory Note gave Plaintiff a "right of first refusal to obtain fully paid and non-assessable units or shares in ACC Industries or ACC Enterprises." (Compl. ¶ 29); (Second Promissory Note at 4, Ex. 2 to Compl). The Second Promissory Note further stated that all interest and outstanding principal was due by September 1, 2017, after which Defendants would be in default and Plaintiff could accelerate all owed principal and interest to be "immediately due and payable." (Compl. ¶¶ 24–27).

Plaintiff alleges that shortly after the execution of the Second Promissory Note, Defendants took actions inconsistent with the requirements of both Promissory Notes. Specifically, on October 24, 2016, ACC Enterprises and ACC Industries filed an Amended Operating Agreement that "restructure[ed], revised or amended [ACC Enterprise's] governing documents, issued new membership units, and transferred, sold, or assigned all or a portion of ACC's equity and assets." (*Id.* ¶¶ 31–32); (*see* Am. Operating Agreement at 2, 15–27, Ex. 4 to Compl.). The purpose of this Amended Operating Agreement was for ACC Enterprises to merge or acquire ACC Industries. (Compl. ¶ 33). Additionally, Defendants entered into a Membership Interest Purchase Agreement ("Purchase Agreement") with Vert Holdings, LLC ("Vert Holdings"). (*Id.* ¶ 32); (Membership Agreement at 2, Ex. 3 to Compl., ECF No. 1-3). The Purchase Agreement identified Vert Holdings as the predecessor in interest to Beverly Pacific, LLC. (Compl. ¶ 34). Additionally, the Purchase Agreement allegedly converted Defendants' loan from Beverly Pacific, LLC, into equity in ACC Enterprises and gave Vert Holdings fully paid and non-assessable units in ACC Enterprises. (*Id.*).

Plaintiff contends that Defendants neither used the funds from the First Promissory Note to pay off Beverly Pacific, LLC's loan as required nor used the funds from the Second Promissory Note to purchase land parcel #040-041-34. (*Id.* ¶¶ 34–37). Plaintiff further states that even though the Purchase Agreement offered ownership shares in Defendants' business, Plaintiff did not receive any prior notice or opportunity to express its rights of first refusal under either Promissory Note. (*Id.*). According to Plaintiff, Defendants gave Vert Holdings the right of first refusal for any new units issued by ACC Enterprises, while also giving control over actions and decisions by ACC Enterprises to Vert Holdings. (*Id.* ¶¶ 34–36).

On December 23, 2016, Plaintiff provided Defendants with written notice that they were in default under the First and Second Promissory Notes. (*Id.* ¶ 38). Defendants subsequently refused to repay the Promissory Notes. (*Id.*).

Because of Defendants' alleged breach of the Promissory Notes and refusal to repay the principal and interest owed, Plaintiff initiated this suit on January 10, 2017, alleging six causes of action against Defendants: (1) breach of contract for the First Promissory Note against ACC Enterprises and ACC Industries; (2) breach of contract for the Second Promissory Note against all Defendants; (3) breach of the implied covenant of good faith and fair dealing regarding the First Promissory Note against ACC Enterprises and ACC Industries.; (4) breach of the implied covenant of good faith and fair dealing regarding the Second Promissory Note against all Defendants; (5) unjust Enrichment as to the First Promissory Note against ACC Enterprises and ACC Industries; (6) unjust enrichment as to the Second Promissory Note against all Defendants. (*Id.* ¶¶ 40–56). Defendants filed the instant Renewed Motion to Dismiss on October 26, 2017, (ECF No. 140).

///

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir.2008). Rule 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard*

*Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### III. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint on several grounds. First, Defendants argue that Plaintiff cannot state a claim for the enforcement of the Promissory Notes because it would require the Court to enforce an illegal contract for the "operation and expansion of a marijuana business." (Am. Mot. to Dismiss ("MTD") 12:22–13:22, ECF No. 140). Second, Defendants argue that the Court should dismiss this action under either the abstention doctrine articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), or in *Burford v. Sun Oil. Co.*, 319 U.S. 315 (1943). (*Id.* 13:24–18:15). Last, according to Defendants, Plaintiff failed to include an indispensable party whose joinder would destroy the

Court's subject matter jurisdiction over this case. (*Id.* 18:18–24:13). The below discussion addresses each argument in turn.

### A. Illegality

Defendants' theory behind the unenforceability of the Promissory Notes rests on the fact that possession and cultivation of cannabis is unlawful under federal law because of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* (*Id.* 13:2–7). Defendants argue that even though the Promissory Notes in this case relate to legal activities such as providing "operating capital" or funds to pay off Defendants' prior business loans, the Notes are effectively tied to advancing Defendants' cannabis cultivation business; thus promoting acts that violate the Controlled Substances Act. (*Id.*). Defendants further argue that the First and Second Promissory Notes are components of a $9-million-dollar agreement that would convert the Promissory Notes into equity in Defendants' cannabis business. (*Id.* 16:22–17:5). Consequently, according to Defendants, the Court cannot enforce the Promissory notes at all since they relate to ownership in an operation that is illegal under federal law. (*Id.*) In response, Plaintiff notes that the Promissory Notes only require the legal act of loan repayment with "United States currency." (Resp. to MTD ("Resp.") 11:1–2, ECF No. 144). Similarly, under Plaintiff's view, no provision of the Promissory Notes "obligated the defendants to perform any acts illegal" in the forum where performance was to take place (here, Nevada). (*Id.* 13:1–8). Even if any part of the Promissory Notes did require illegal activity, Plaintiff continues, the Court can strike that illegal portion and enforce the legal aspects of the Promissory Notes. (*Id.* 13:9–11).

The first step to decide whether illegality renders a contract unenforceable rests on choice-of-law principles. *See Bassidji v. Goe*, 413 F.3d 928, 935 (9th Cir. 2005) ("While we recognize that federal law governs whether the transaction . . . was illegal, the enforceability of the illegal guarantees under general principles of contract law is a separate question."). The

guiding principle is that federal courts sitting in diversity should apply the applicable state substantive law so long as enforcement does not mandate illegal conduct under federal law. *Bassidji*, 413 F.3d at 936, 939 ("[W]ith regard to the enforcement of 'illegal' contracts, courts will not order a party to a contract to perform an act that is in direct violation of a positive law directive."). In other words, a court only needs to dismiss a claim if the lone remedy available would be illegal under either federal or state law. *See id.*

Here, Nevada law supplies the applicable substantive law. The parties were to perform the contract in Nevada, and the Promissory Notes state that they "shall be governed by and construed under the laws of the State of Nevada." (First Promissory Note at 4, Ex. 1 to Compl., ECF No. 1-1); (Second Promissory Note at 3, Ex. 2 to Compl., ECF No. 1-2). *See Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1064 (Nev. 2014) ("Nevada's choice-of-law principles permit parties 'within broad limits to choose the law that will determine the validity and effect of their contract.'") (citations omitted).

Under Nevada law, "contracts made in contravention of the law do not create a right of action." *Vincent v. Santa Cruz*, 647 P.2d 379, 381 (Nev. 1982). Stated differently, Nevada law strips the ability to sue for breach of contract if the underlying contract is for an illegal act. *See id.*; *Loomis v. Lange Fin. Corp.*, 865 P.2d 1161, 1165 (Nev. 1993) ("No court should be required to serve as paymaster of the wages of crime.").

Nevertheless, a finding of illegality is not fatal to every contract under Nevada law. Instead, when some portions of a contract are illegal, but not all, Nevada law allows courts to sever the illegal portions from those that are legal, and then enforce the legal portions. *Vincent*, 647 P.2d at 381. The ability to sever only applies, however, when the illegal portions are "collateral to the main transaction" and "the language employed and the subject-matter of the contract" shows that severability will preserve the parties' intent in making the contract. *Vincent*, 647 P.2d at 381 (*quoting Golberg v. Sanglier*, 616 P.2d 1239 (Wash. Ct. App. 1980);

*Linebarger v. Devine*, 214 P. 532, 534 (Nev. 1923); *Cox v. Station Casinos, LLC*, No. 2:14-cv-638-JCM-VCF, 2014 WL 3747605, at *4 (D. Nev. June 25, 2014), report and recommendation adopted, No. 2:14-cv-638 JCM VCF, 2014 WL 3778241 (D. Nev. July 21, 2014) ("Severability preserves the contracting parties' intent by maintaining the existence of a contract but striking illegal provisions that are collateral to the contract's primary purpose.").

As an example of severability, in *Vincent v. Santa Cruz* four individuals entered into a valid purchase agreement for land. 647 P.2d at 380. Several months later, however, the parties to the purchase agreement added a clause that violated Nevada law on recording property sales, which made the overall agreement unlawful. *Id.* at 380–81. Nevertheless, the Nevada Supreme Court still found the purchase agreement enforceable by severing the unlawful addition from the overall legal purchase agreement. *Id.* at 381. Severance was appropriate because the remaining purchase agreement aligned with the parties' overall intent to enter into a land sale agreement—shown by the fact that the parties inserted the illegal portion *after* they executed the purchase agreement. *Id.* Further, the illegal portion was merely collateral to the overall contract, and thus severable, because it focused on the relatively minor act of recording the sale compared to the overall land purchase. *Id.* Accordingly, the once illegal agreement could still be enforced by the Nevada court, albeit in part.

Applying Nevada law to this case, the Court finds that it can provide a remedy for Plaintiff that both complies with Nevada substantive law and does not conflict with federal law. This finding comes from the fact that several requirements of the First and Second Promissory Notes command the Defendants to use the loaned funds for solely legal acts. The First Promissory Note, for example, requires Defendants to use certain funds to pay off Defendants' prior lenders. (First Promissory Note at 2, Ex. 1 to Compl.). Similarly, the Second Promissory Note requires Defendants to use all the funds to purchase two parcels of land in Pahrump, Nevada. (Second Promissory Note at 2, Ex. 2 to Compl.). Because of the explicit directives,

enforcing those terms of the Promissory Notes as shown in the Complaint does not mandate any action that would violate the Controlled Substances Act under federal law; nor does it provide any discretion to Defendants that would enable them to use the funds for the cultivation or possession of cannabis.

At the same time, the Court recognizes that the Complaint's allegations and attached exhibits illustrate Defendants' involvement in a cannabis cultivation business. Specifically, around the time Plaintiff executed the Promissory Notes with Defendants, Plaintiff alleges ACC Enterprises merged or acquired Defendant ACC Industries to "operate a cannabis cultivation business in Pahrump, Nevada." (Compl. ¶ 33, 5:21–13 n.15); (Am. Operating Agreement at 2, Ex. 4 to Compl., ECF No. 1-4). Further, prior to that business transformation, Defendant ACC Industries, who was a named party in the First and Second Promissory Notes, was "previously engaged" in the cannabis cultivation business. (Compl. ¶ 33, 5:21–13 n.15); (Am. Operating Agreement at 2, Ex. 4 to Compl.). Therefore, from the face of the Complaint it stands to reason that Plaintiff executed the Promissory Notes with knowledge of Defendants actions in a federally unlawful cannabis business. This means that the Court cannot order any remedy that permits Defendants to directly use Plaintiff's funds for cannabis cultivation or to gain ownership in Defendant's cannabis business. Doing so would provide relief in contravention of federal law under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* In terms of the Promissory Notes here, that would mean that the Court cannot enforce the provisions of both Promissory Notes that give Plaintiff the "right of first refusal" for an ownership interest in Defendants' business; nor can the Court enforce the provision under the First Promissory Note that provides funds for Defendants to use as "operating capital" to cultivate cannabis. (First Promissory Note at 2, 4; Ex. 1 to Compl.); (Second Promissory Note 4, Ex. 2 to Compl.).

In finding portions of the Promissory Notes to be unenforceable, the Court does not need to dismiss Plaintiff's Complaint in its entirety. Indeed, because Nevada law allows a Court to

sever illegal portions of a contract from those that are legal, the Court could enforce only the legal provisions discussed *supra*. Whether severance should apply in this case, however, is a question to be decided through evidence that such action would be in line with the parties' intent in contracting and that the unenforceable provisions are collateral to the overall agreement—evidence that the Court does not have at this stage in the case.[2] Accordingly, insofar as the Court finds that some aspects of the contract are enforceable, Plaintiff has stated a cognizable claim for relief, thereby avoiding dismissal. *See Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citations omitted).

In finding limited enforceability of the Promissory Notes, the Court is persuaded by other courts within the Ninth Circuit that have similarly dealt with this issue. For example, in *Mann v. Gullickson*, No. 15-CV-03630-MEJ, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016), the federal district court in California had to decide whether it could enforce a contract even though it related to the sale and cultivation of marijuana. There, one party contracted with another to sell two businesses: a "consulting business for state-regulated marijuana dispensary or cultivation licenses; and a "franchise hydroponic operation." *See Mann*, 2016 WL 6473215, at *1. Following the sale, the buyer had to pay the seller with $400,000 in three installments, which did not occur. *Id.* The seller then brought a breach of contract claim against the buyer; and the buyer moved to dismiss arguing that enforcement of the contract would "mandate illegal conduct" because the buyer had "no other means by which to pay [the seller] other than with revenue from [cultivating marijuana]." *Id.* at 2.

---

[2] Defendants' contention that the Promissory Notes are one part of a larger $9-million-dollar deal for equity in Defendants' business, (see MTD 16:18–17:5), does not change the Court's analysis. Nevada law on severance would still allow the Court to potentially fashion relief so that only certain parts of the Promissory Notes could be enforceable—portions unrelated to payment for ownership. *See Vincent*, 647 P.2d at 381. Thus, whether the Promissory Notes are part of a larger deal will only impact the application of severability in this case, not the result of dismissal at this time.

Ultimately, the court in *Mann* decided that the claims should not be dismissed. Though the court recognized the illegality of marijuana under federal law, the court found that ordering payment on the contract would not require any illegal conduct. *See id.* at 8 ("[I]f the Court ordered payment, and [the buyer's] only way to pay was by making these businesses operational, that situation would not necessarily require [the buyer] to be involved in the medical marijuana industry; [the buyer] has not shown otherwise.").

Here, just as in *Mann v. Gullickson*, the potential remedy in this case discussed *supra* would not mandate illegal activity. Accordingly, the Court declines to dismiss Plaintiff's claims relating to breach of contract on illegality grounds at this stage.[3]

### B. *Colorado River* Abstention

Defendants argue that even if the Court finds Plaintiff's Complaint to be viable, it should still be dismissed "pursuant to the *Colorado River* doctrine" because there was a nearly identical case in Nevada state court involving the parties here, and Nevada state courts are better suited to handle the issues in this case. (MTD 13:24–17:17); (Reply at 5:2–6:1, ECF No. 146). The *Colorado River* abstention doctrine applies when a case in federal court is identical to a concurrently pending state court case. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). This abstention doctrine applies in "exceptional circumstances," which Courts determine by evaluating several factors. *See id.* at 818–19.

In this case, the Court does not need to balance any factors to find that *Colorado River* does not apply. Moreover, the previously pending Nevada state court case is now in federal

---

[3] Defendants' argument for dismissal on illegality grounds in the Renewed Motion to Dismiss, (ECF No. 140), only addresses Plaintiff's breach of contract claims; it does not discuss the viability of Plaintiff's claims for Unjust Enrichment or Breach of the Implied Covenant of Good Faith and Fair Dealing, (Compl. ¶¶ 48–56). In Defendants' Reply, (ECF No. 146), however, Defendants appear to introduce for the first time an argument that "Plaintiff's equitable claims are also barred by the unclean hands doctrine." (Reply 1:19–29, 4:1–2). Nevertheless, the Court declines to address that argument in this Order because Plaintiff has not had an adequate opportunity to respond. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief").

court as *ACC Industries, Inc., et al. v. Bart Street III, LLC, et al.*, 2:17-cv-00942-JAD-CWH. *Colorado River* abstention is therefore inapplicable. *Sexton v. NDEX W., LLC*, 713 F.3d 533, 538 (9th Cir. 2013) (stating that *Colorado River* abstention is reserved to cases where state proceedings are "pending concurrently" with federal proceedings); s*ee Miller v. Wholesale Am. Mortg., Inc.*, No. 12-CV-03481-JST, 2013 WL 1209492, at *2 (N.D. Cal. Mar. 25, 2013) ("[T]here is no currently pending state court action with which this Court might interfere. Defendants removed this case from state court in May, and the *Colorado River* doctrine does not apply.").

### C. *Burford* Abstention

In addition to Defendant's *Colorado River* abstention argument, Defendants also invoke the abstention doctrine under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), to argue that the Court should dismiss this case. (MTD 17:22, 18:9–15). Defendants argument is that federal review would frustrate the difficult matters of state law and policy at issue in this case, thereby warranting the Court's abstention out of "federalism and comity." (*Id.* 17:22, 18:9–15). Plaintiff counters Defendants' argument by stating that this case does not involve complicated issues of federal review because "this is a straightforward breach of contract case;" and that this case is one for monetary damages, which means that under *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), the Court cannot dismiss the case under the *Burford* doctrine.

*Burford* abstention is "designed to limit federal interference with the development of state policy," and it is justified where the issues in federal court "are primarily questions regarding that state's laws." *Tucker v. First Maryland Sav. & Loan, Inc.*, 942 F.2d 1401, 1407 (9th Cir. 1991). Application of *Burford* abstention generally requires that "the state has chosen to concentrate suits . . . in a particular court; that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and that federal review might disrupt state efforts to establish a coherent policy."

*Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir. 1982). Nonetheless, "[w]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *See Tucker*, 942 F.2d at 1405 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989)).

Here, this case does not warrant dismissal under *Burford*. First, the Court is unaware of—and Defendants do not provide—any facts or law that show Nevada chose to concentrate breach of contract actions regarding cannabis businesses in a particular court. *See, e.g.*, *Lao v. Wickes Furniture Co.*, 455 F. Supp. 2d 1045, 1057 (C.D. Cal. 2006) (citing *Communications Telesystems Int'l v. California Public Utility Com'n*, 196 F.3d 1011, 1020 (9th Cir. 1999), for the principle that "courts typically place the burden of establishing . . . an abstention doctrine on the party opposing the exercise of federal jurisdiction."). Second, this case does not present issues that state courts might have special competence. That is, though cannabis sales may be complex and unique to Nevada, breach of contract claims regarding the lending of money to businesses are not. Finally, the chance that the Court's decision could disrupt Nevada's efforts to establish a coherent policy on cannabis does not weigh toward abstention because the present issues here focus on the enforceability of contracts under *federal* law, thus extending beyond Nevada and remaining appropriate for federal review. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989) (explaining how *Burford* abstention is appropriate if it would not "disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem"). Accordingly, the Court declines to abstain.

**D.     Indispensable Party**

Defendants last argument for this Court to dismiss Plaintiff's Complaint focuses on Plaintiff's alleged failure to join an indispensable party. Defendants argue that Plaintiff failed

to include Solutionary-NV in this case, who Defendants allege was involved in the subsequent modifications of the Promissory Notes from loans to equity in Defendants' business. (*See* Decl. of Howard Misle ¶ 13, Ex. 1 to MTD, ECF No. 140-1) (stating that "[b]ased on . . . representations and statements by [a principal of Plaintiff's], Defendants were informed and believed that . . . Solutionary . . . was acting . . . as a party in the negotiations"). Defendants contend that Solutionary-NV's involvement is evinced by the fact that a principal of Plaintiff used the email address "steveidelman@solutionary.com" in several emails about the loan modification. (*Id.* ¶ 12). Defendants argue that without Solutionary-NV in the case, they would be unable to pursue any potential mandatory counterclaims. (MTD 23:3–6).

In response, Plaintiff argues that "it is factually and legally impossible for Defendants to have entered into a [c]ontract with Solutionary" because Solutionary-NV dissolved as a corporation in December 2012—four years before the parties met in 2016. (Resp. 16:8–16). Plaintiff additionally contends that any claims against Solutionary-NV are time-barred under Nevada's statute of limitations for claims against dissolved corporations, Nev. Rev. Stat. § 78.585(1). (*Id.* 17:6–18:19). Last, Plaintiff argues that Solutionary-NV does not meet the requirements to be an indispensable party. (*Id.* 18:21–20:17).

To determine whether a party is "indispensable" under Federal Rule of Civil Procedure 19, courts take a two-step approach. First, the court must determine whether the absent party is "necessary" to the case. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). If the party is "necessary," the court must then determine whether that party is "indispensable" so that "in equity and good conscience" the suit should be dismissed. *Id.*

Whether a party is "necessary" under the first step depends on two findings: (1) "complete relief" is not possible among those already parties to the suit; and (2) the absent party has a "legally protected" interest in the suit. *Id.* If the court finds that a party is not

"necessary," then the court does not need to consider the second step under Rule 19, and the case may continue without the absent party. *Id.* at 559.

Here, Defendants' argument supporting Solutionary-NV as an indispensable party concerns Solutionary-NV's involvement in the "subsequent oral modification" to the Promissory Notes, wherein Plaintiff and Defendants allegedly converted the Promissory Notes into equity in Defendants' cannabis business. (MTD 20:26 n.7). As stated previously, however, the Court cannot enforce any contract between the parties that would require relief in the form of ownership interest in Defendants' cannabis business. Consequently, because Solutionary-NV's asserted interest in this case is limited to unenforceable portions of the alleged contract, Solutionary-NV is not needed for the Court to award complete relief among the parties to this case. Accordingly, the Court declines to dismiss Plaintiff's Complaint even though Solutionary-NV is not a named party.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Renewed Motion to Dismiss, (ECF No. 140), is **GRANTED in part** and **DENIED in part**. Plaintiff's first and second causes of action for breach of contract are **dismissed with prejudice** insofar as they seek relief for Defendants' alleged breach of the right of first refusal in the First and Second Promissory Notes and Defendants' alleged failure to repay Plaintiff's loan for "Operating Capital" in the First Promissory Note.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 142), is **DENIED as moot**.

**DATED** this __27__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge