# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BART STREET III, a Nebraska Limited
Liability Company,

        Plaintiff,

  vs.

ACC ENTERPRISES, LLC, a Nevada Limited
Liability Company; ACC INDUSTRIES, INC.,
a Nevada Corporation; CALVADA
PARTNERS, LLC, a Nevada Limited Liability
Company,

        Defendants.

Case No.: 2:17-cv-00083-GMN-VCF

**ORDER**

Pending before the Court is Plaintiff Bart Street III, LLC's ("Plaintiff's") Motion for Summary Judgment, (ECF No. 180). Defendants ACC Enterprises, LLC, ACC Industries, Inc., and Calvada Partners, LLC (collectively, "Defendants") filed a Response, (ECF No. 191), and Plaintiff filed a Reply, (ECF No. 196).

Also pending before the Court is Defendants' Motion for Summary Judgment, (ECF No. 185). Plaintiff filed a Response, (ECF No. 190), and Defendants filed a Reply, (ECF No. 197).

Also pending before the Court is Defendants' Objection, (ECF No. 198), to United States Magistrate Judge Cam Ferenbach's Order, (ECF No. 193), granting Plaintiff's Motions to Establish Protocols for Searching Texts, (ECF No. 173), and to Compel, (ECF No. 178). Plaintiff filed a Response, (ECF No. 199).

For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Summary Judgment. The Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment. The Court **DENIES** Defendants' Objection.

//

## I. BACKGROUND

This case arises from Defendants' alleged breach of a multi-million-dollar loan contract (the "Contract" or the "Agreement") that Defendants entered with Plaintiff to finance the expansion of Defendants' marijuana cultivation business. Plaintiff Bart Street III, LLC was formed for the purpose of providing a loan to Defendants' business. (*See* Sean Mullen[1] Dep. 21:1–23:5, Ex. 7 to Pl.'s MSJ, ECF No. 183-2). Defendants own and operate a marijuana cultivation plant in Pahrump, Nevada, which is currently licensed by the state to grow medical and recreational marijuana. (*See* Howard Misle[2] ("Misle") Decl. ¶¶ 3–4, Ex. 1 to Defs.' MSJ, ECF No. 185-1). At the time the parties entered the Agreement, Defendants' had a license to cultivate marijuana for medical use, but Nevada had not yet legalized recreational marijuana at the state level. (*See id.* ¶ 9). Anticipating that the state would sanction recreational marijuana, Defendants sought outside funding to expand their operation. (*Id.*) To that end, the parties reached an agreement for Plaintiff to loan Defendants $4.7 million through two promissory notes (collectively, the "Notes"). (*See* Misle Dep. 64:24–71:1, 82:20–86:6, Ex. 5 to Pl.'s MSJ, ECF No. 181-5); (First Promissory Note ("First Note"), Ex. 10 to Pl.'s MSJ, ECF No. 183-5); (Second Promissory Note ("Second Note"), Ex. 11 to Pl.'s MSJ, ECF No. 183-6).

The parties executed the First Note on August 19, 2016. (*See* First Note). The Note provided Defendants a $3.5 million loan at an interest rate of seven percent (7%) per year. (*Id.*). The terms of the First Note earmarked Defendants' uses of the loan funds as follows: $25,000.00 to Plaintiff for due diligence costs, $750,000.00 to Defendants for operating capital, $2,200,000.00 to Beverly Pacific, LLC ("BP"), $275,000.00 to Insight Medical, LLC ("Insight"), and $275,000.00 to Hill Health, LLC ("HH"). (*Id.*) BP, Insight, and HH had

---

[1] Sean Mullen is the business partner of Steve Idelman ("Idelman"), the principal of Plaintiff Bart Street III, LLC. (*See* Misle Decl. ¶¶ 5, 11, Ex. 1 to Defs.'s MSJ, ECF No. 185-1).

[2] Howard Misle is a managing member of Defendant ACC Enterprises, LLC and a director of Defendant ACC Industries, Inc. (Misle Decl. ¶ 1).

previously extended loans to Defendants that would soon become due. (*See* HH and Insight Loan Agreement, Ex. 8 to Pl.'s MSJ, ECF No. 183-3); (BP Convertible Promissory Note, Ex. 9 to Pl.'s MSJ, ECF No. 183-4); (Misle Dep. 39:12–25, 99:8–102:20, 114:18–115:12, ECF Nos. 181-5, 182–1). The First Note also included a right of first refusal term stating, "During the period of time that there is any outstanding principal or interest due under this Note, at the option of the Holder, the Holder shall have a First Right of Refusal to participate and obtain fully paid and non-assessable Units or Shares of either or both ACC Industries, Inc. and ACC Enterprises, LLC." (First Note ¶ 12).

The parties executed the Second Note on September 6, 2016, which provided Defendants $1.2 million at an interest rate of three percent (3%) per year (*See* Second Note). The Second Note's earmarks directed Defendants to purchase two parcels of land; the Note provided $500,000.00 to acquire the parcel located at 1241 E. Calvada Boulevard, Pahrump, Nye County, Nevada and $700,000.00 for the nearby 1261 E. Calvada Boulevard. (*See id.*). The Second Note included a right of first refusal provision identical to that of the First Note. (*See id.* ¶ 12).

Defendants did not repay the BP loan as the First Note required. (Misle Dep. 82:12–16, 116:17–20). Instead, on October 24, 2016, BP converted its loan to equity on behalf of its successor-in-interest, Vert Holdings, LLC ("Vert"), but Defendants retained the $2.2 million allocated to paying BP in the First Note. (Vert Membership Purchase Agreement § 1.4, Ex. 16 to Pl.'s MSJ, ECF No. 184-5); (Misle Dep. 123:6–124:24). Defendants have not repaid any principal or interest owed under the Notes. (*See* Misle Dep. 68:9–14, 93:18–19, 253:13–15); (Peter Seltzer[3] Dep. 56:19–22, Ex. 6 to Pl.'s MSJ, ECF No. 182-2). Plaintiff commenced this action for breach of contract and unjust enrichment by filing the Complaint on January 10, 2017. (*See* Compl., ECF No. 1).

---

[3] Peter Seltzer is a Rule 30(b)(6) representative for all Defendants. (Seltzer Dep. 1:14–15).

On October 26, 2017, Defendants moved to dismiss the Complaint, primarily arguing that they cannot be liable for breach of a contract that is illegal under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("CSA"). (*See* Renewed Mot. Dismiss ("MTD"), ECF No. 155) In its Order, the Court found that Nevada does not take such a black-and-white approach to the enforceability of illegal contracts. (MTD Order 8:19–22, ECF No. 155). Rather, the Court asked whether the illegal provisions of the contract are severable. (*Id.* 8:19–22, 9:6–17). It noted that a provision is severable if it is collateral to the parties' intent in entering the contract. (*Id.* 8:22–9:5). If the illegal provisions are severable, then the Court may enforce the lawful terms of the Contract. (*Id.*) The Court found that the right of first refusal and operating capital terms violated the CSA. (*Id.* 10:5–23). Both were unenforceable because the right of first refusal term would have allowed Plaintiff to profit from the sale of marijuana, and the operating capital provision provided direct assistance to Defendants' cultivation of marijuana. (*Id.*) Nevertheless, the Court concluded that it did not have the evidence to assess the Contract's severability at the motion to dismiss stage. (*Id.* 10:24–11:8). It explained, "[w]hether severance should apply in this case, however, is a question to be decided through evidence that such action would be in line with the parties' intent in contracting and that the unenforceable provisions are collateral to the overall agreement—evidence the Court does not have at this stage of the case." (*Id.*)

Now at summary judgment, the parties dispute their intent in entering the Contract. Plaintiff contends that the Contract was primarily a loan, and the right of first refusal term was collateral to the parties' intent in entering the Contract. (*See* Pl.'s MSJ, Statement of Facts ¶¶ 7–8, 14). In contrast, Defendants argue that the Notes were part of a larger $9 million agreement (the "Modification Agreement") for Plaintiff to obtain an equity stake in Defendants' marijuana business, which demonstrates the centrality of Plaintiff's intent to profit from Defendants' sale of marijuana. (Defs.' MSJ, Statement of Facts ¶¶ 27–40, 43, 47). Even

if the parties never executed the Modification Agreement, Defendants argue that the right of first refusal term is not severable because Plaintiff primarily intended upon having a pathway to obtain equity in Defendants' business. (*See id.* ¶¶ 42, 45–46). Accordingly, both parties now move for summary judgment. (*See* MSJs, ECF Nos. 180, 185).

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

//

//

**B.     Objections to a Magistrate Judge's Order**

When reviewing the order of a magistrate judge, the order should only be set aside if the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); LR IB 3-1(a); 28 U.S.C. § 636(b)(1)(A); *Laxalt v. McClatchy*, 602 F. Supp. 214, 216 (D. Nev. 1985). A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Burdick v. Comm'r IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, No. 2:14-cv-00224-RCJ, 2014 U.S. Dist. LEXIS 129489, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014). When reviewing the order, however, the magistrate judge "is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007). The district judge "may not simply substitute its judgment" for that of the magistrate judge. *Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (citing *United States v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cir. 1988)).

## III.  DISCUSSION

Plaintiff argues that it should receive summary judgment on its breach of contract claim because the illegal terms of the Contract are severable; or, in the alternative, Plaintiff contends it should recover for Defendants' unjust enrichment. (Pl.'s MSJ 18:12–28:7, ECF No. 180). Defendants ask the Court to hold that they are liable under neither theory because of the Contract's illegality. (Defs.' MSJ 14:20–26:16, ECF No. 185). The Court begins its analysis with breach of contract.

### A. Breach of Contract

Plaintiff argues that the Contract with Defendants is valid and enforceable because the Court can sever the right of first refusal and operating capital terms. (Pl.'s MSJ 18:12–25:28).

Defendants argue that the Contract is unenforceable because: (1) it violates federal law; (2) the illegal provisions cannot be severed; and (3) Plaintiff engaged in the first breach of the Contract. (Defs.' MSJ 14:12–25:17). The Court addresses Defendants' first-to-breach defense before turning to the Contract's legality.

### 1. First Breach

The Court first addresses Defendants' argument that Plaintiff is precluded from seeking recovery under the so-called "first breach doctrine" because, if Defendants are correct, the Court need not analyze Plaintiff's breach of contract claim further. The Court concludes the defense is inapplicable because Defendants engaged in the first breach of the Contract.

Nevada law provides, "the party who commits the first breach of the contract cannot maintain an action against the other for a subsequent failure to perform." *Bradley v. Nev.-Cal.-Or. Ry.*, 178 P. 906, 908 (Nev. 1919). If the first breach of the contract is material, it may excuse the other party's non-performance of its obligations. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526 (9th Cir. 2011).

Defendants argue that Plaintiff breached the Contract in two ways prior to Defendants' alleged breach, which bars Plaintiff's recovery. (*See* Defs.' MSJ 23:16–24:19). Defendants premise the first alleged breach upon a purported modification to the Notes. Specifically, Defendants argue that the parties modified their $4.3 million agreement into a larger $9 million financing arrangement under which Plaintiff would provide Defendants with a $3 million loan and an additional $6 million equity investment. (*Id.* 7:7–13:8, 23:16–26, 24:14–19). Defendants argue that Plaintiff breached the agreement by failing to remit the remaining $4.7 million owed to Defendants. (*Id.*). Alternatively, Defendants argue that even if the Contract was not modified, Plaintiff breached the agreement by initiating this lawsuit before the maturity date of the Notes. (*Id.* 23:27–24:13). Regarding the first allegation, Plaintiff responds that the parties never completed a modification compliant with the statute of frauds. (Pl.'s Resp. 20:2–

4); (Pl.'s MSJ 13:1–17:27). Plaintiff also argues it did not breach the Notes because, even though it commenced this action before the maturity date, Defendants preliminarily breached the Contract by failing to repay BP pursuant to the First Note and instead letting BP convert its note to equity. (Pl.'s Resp. 19:4–20:12).

The Court concludes that the first breach defense is inapplicable. Defendants cannot successfully assert that Plaintiff breached a $9,000,000.00 modification agreement because Defendants' purported modification is barred by the statute of frauds. Nevada's statute of frauds explains that certain agreements are void "unless the agreement, or some note or memorandum thereof expressing the consideration, is in writing, and subscribed by the person charged therewith." NRS § 111.220. Loans of over $100,000 "made by a person engaged in the business of lending money" and modifications thereof are subject to the statute of frauds. NRS § 111.220(4); *see, e.g.*, *Hampton v. Countrywide Home Loans Inc.*, No. 2:10-cv-01775-RLH-GWF, 2011 U.S. Dist. LEXIS 53715, 2011 WL 1792743, at *2 (D. Nev. May 11, 2011). The Promissory Notes' text indicates that Plaintiff extended a $4.7 million loan to Defendants. (*See* Promissory Notes, Exs. 10–11 to Pl.'s. MSJ, ECF No. 183-5–183-6). Plaintiff is in the business of lending money; it was formed for the express purpose of lending money to Defendants. (Mullen Dep. 23:2–5, Ex. 7 to Pl.'s MSJ, ECF No. 183-2). Therefore, for a modification to be enforceable, it must have been reduced to a writing signed by Plaintiff. However, Defendants argue that the agreement was reduced to a writing and accepted by silence. (Defs.' MSJ 9:18–10:11)

Defendants highlight evidence indicating that the parties negotiated to reach a $9 million Modification Agreement, which, at best, shows that the parties intended to execute the modification. (*See* Misle Decl. ¶¶ 23, 28, Ex. A to March 14, 2017 Resp. to Pl.'s MSJ, ECF No. 35) (noting that the parties orally modified the Notes); (Defs.' MSJ ¶¶ 31–40) (describing negotiations over a modification that were never reduced to a signed writing containing that

material terms of the modification). Defendants argue that Plaintiff accepted the Modification Agreement's terms by silence after Defendants sent Plaintiff an email articulating the terms and Plaintiff subsequently failed to respond. (Defs.' MSJ 9:18–10:11); (s*ee* Calvada Partners' Answers to RFA No. 22, Ex. 29 to Pl.'s MSJ 12:9–10, ECF No. 184-18). While the evidence could indicate that the parties intended to agree to the alleged modification, the modification was never reduced to a signed writing, and its enforcement is therefore barred by the statute of frauds. *See Nehls v. William Stock Farming Co.*, 184 P. 212, 214 (Nev. 1919) (acknowledging acceptance by silence as an exception to the statute of frauds only under a theory of promissory estoppel). Accordingly, there was no legally operative modification.

The Court concludes that Plaintiff did not engage in the first breach of the Contract by initiating this lawsuit. The First Note instructs Defendants to repay BP. (*See* First Note). Instead of taking payment on its note, BP converted its note to equity, and the conversion caused Defendants to breach the First Note. (BP Convertible Promissory Note, Ex. 9 to Pl.'s MSJ, ECF No. 183-4). Therefore, even though Plaintiff commenced this action before the maturity date, Defendants' alleged breach is not excused by the first-to-breach defense.

The Court next discusses Defendants' argument that the Contract is unenforceable because it is illegal. The Court first addresses Defendants' renewed argument that the entirety of the Contract is illegal before turning to severability.

### 2. Illegality

Despite the previous Order holding the contrary, Defendants again press that the entire Contract is illegal under the CSA. (Defs.' MSJ 14:20–23:15). In the previous Order, the inquiry for the Court was whether it could grant Plaintiff's relief under Nevada substantive law in a manner that did not conflict with federal law. (*See id.* 9:18–10:4); *see also Ginsburg v. ICC Holdings, LLC*, No. 3:16-cv-2311-D, 2017 U.S. Dist. LEXIS 187391, 2017 WL 5467688, at *9 (N.D. Tex. Nov. 13, 2017) (explaining that promissory notes financing a marijuana business are

not automatically void because "federal courts do not take such a 'black-and-white' approach to enforceability."); *Mann. v. Gullickson*, No. 15-cv-03630-MEJ, 2016 U.S. Dist. LEXIS 152125, 2016 WL 6473215, at *7 (N.D. Cal. 2016) (explaining that payment for the purchase of a marijuana business "does not require [defendant] to possess, cultivate, or distribute marijuana . . . . [t]hus, unlike *Bassidji*, ordering payment on the parties' contract would not mandate illegal conduct.") Concluding that such a remedy is possible, the Court explained that the entire agreement is not automatically unenforceable because, "Nevada law allows courts to sever the illegal portions from those that are legal, and then enforce the legal portions." (MTD Order, 8:20–21, ECF No. 155). The Court clarified that if the illegal provisions—the right of first refusal and operating capital terms—are severable, the Court can fashion relief because the provisions lending money to repay existing debts and purchase land are lawful. (*Id.*). Given that the Court's previous holding is the law of the case, the Court declines to disturb it. *See Christianson v. Colt Indus. Operating Corp.* 486 U.S. 800, 817 (1988). The Court now addresses the dispositive issue to Plaintiff's breach of contract claim: severability.

### 3. Severability

The parties dispute whether the illegal portions of the contract, the right of first refusal and operating capital terms, are severable from the otherwise lawful provisions. (*See* Pl.'s MSJ 24:10–25:24); (Defs.' MSJ 24:20–25:17). The Court finds that it cannot determine severability at summary judgment. Although severability is an issue of law for the Court to decide, there is an underlying dispute of fact regarding whether the right of first refusal was collateral to the parties' primary purpose in entering the Contract.

While illegal contracts are generally unenforceable under Nevada law, a contract containing illegal provisions is enforceable if the illegal terms are severable. *See Vincent v. Santa Cruz*, 647 P.2d 379, 381 (Nev. 1982). Contract terms are severable if they are "collateral to the main transaction." *Id.* A term is collateral if the court could strike the provision and

enforcement would preserve the parties' intent in making the agreement. *See id.*; *see also Sprouse v. Wentz*, 781 P.2d 1136, 1140–41 (Nev. 1989). Whether terms are severable is a question of law to be decided by the court. *Sprouse*, 781 P.2d at 1140. The court determines severability first by looking to the terms and subject-matter of the contract. *Id*. If the parties' intent remains unclear, then the court turns to testimony surrounding the making of the contract. *See id.*; *see also Serpa v. Darling*, 810 P.2d 778, 782 (Nev. 1991) (Rose, J., dissenting).

In the previous Order, the Court held that the right of first refusal and operating capital provisions of the Contract are illegal because they "permit[] Defendants to directly use Plaintiff's funds for cannabis cultivation or to gain ownership in Defendant's cannabis business." (MTD Order 10:5–10:23). The Court, however, left its determination of severability for a later date. (*Id.* 7:3–12:9). The Order explained, "[w]hether severance should apply in this case . . . is a question to be decided through evidence that such action would be in line with the parties' intent in contracting and that the unenforceable provisions are collateral to the overall agreement—evidence the Court does not have at this stage in the case." (*Id.* 11:2–5).

Now, at summary judgment, the Court assesses the evidence of the parties' intent. [4] If the parties' primarily intended the loan to provide Plaintiff a path to obtain an ownership interest in Defendants' marijuana business, then the entire Contract is unenforceable. However, if the parties primarily intended to execute a loan agreement for which the right of first refusal

---

[4] As an initial matter, the Court limits its severability analysis to the right of first refusal term, not the operating capital term. It is Defendants' burden to establish the defense of illegality. *See Schwartz v. Schwartz*, 591 P.2d 1137, 1140 n.2 (Nev. 1979) (noting that a defendant bears the burden to prove an affirmative defense). Defendants do not present any evidence that enforcing the operating capital provision is essential to the parties' intent. Rather, Defendants argue that Plaintiff allowed them to use more of the loan for operating capital than the First Note earmarks, indicating that Plaintiff cannot recover the additional allowance. (Defs.' MSJ 22:25–23:5); (Defs.' Resp. to Pl. MSJ 7:9–8:4). The argument only implicates Plaintiff's potential remedy, not the term's severability. Defendants also argue that Plaintiff's allowance indicates that the earmarks in the Notes are nominal and unenforceable. (*See* Defs.' Resp. to Pl.'s MSJ 7:6–8:26). The Court finds the argument foreclosed by the statute of frauds. *See supra* § (A)(1). Thus, Defendants have not argued that the operating capital term is inseverable.

and operating capital provisions were not essential to the parties' intent in entering the agreement, then the provisions are severable and do not defeat enforcement. (*See id.* 8:19–10:4, 10:24–12:9).

Plaintiff argues that the Court should sever any unlawful provisions of the Contract because they are collateral to the parties' primary purpose: "enabl[ing] Defendants to purchase the Real Property and repay [HH, Insight,] and BP." (Pl.'s MSJ 25:1–3); (*see also* Pl.'s Resp. to Defs.' MSJ, 20:13–21:7). Plaintiff explains that unlike the earmarks, the right of first refusal was never assigned any value on the face of the Promissory Notes, and it is therefore severable because its value is *de minimis*. (*Id.* 25:7–10). Plaintiff also argues that the term is severable because Plaintiff has the right to waive the provision as its beneficiary. (*Id.*) Defendants counter that, "[p]laintiff's single overriding intent was to provide financial assistance to and, in turn, derive financial benefit from (including an ownership interest in) Defendants' marijuana cultivation business." (Defs.' Resp. to Pl.'s MSJ 5:18–20); (*see also* Defs.' MSJ 20:6–24) (explaining that providing Plaintiff a right of first refusal as a pathway to invest in and profit from Defendants' business is part of the Contract's primary purpose). Therefore, they argue the Contract is unenforceable in its entirety. (*Id.* 5:20–7:5).

Looking first to the text and subject-matter of the Promissory Notes, the Court finds that the parties' intent is ambiguous. Several of the requirements of the Promissory Notes evidence the intent to enter lawful transactions. (*See* First Promissory Note, Ex. 10 to Pl.'s MSJ, ECF No. 183-5) (earmarking funds for due diligence costs and payment to prior lenders); (Second Promissory Note, Ex. 11 to Pl.'s MSJ, ECF No. 183-6) (earmarking funds to acquire two parcels of land); (*see also* Order 9:18–10:4) (explaining that those provisions mandate only lawful conduct). Nevertheless, both Notes provide Plaintiff a right of first refusal to acquire units or shares in Defendants' business if any are offered while any principal or interest remains owing on the Notes. (*See* First Note ¶ 12); (Second Note ¶ 12). The right of first refusal is not

earmarked for specific consideration, but the Court is unconvinced that it can draw any conclusions about the parties' intent from the omission. The Notes' terms do not resolve whether providing Plaintiff a potential pathway to ownership was essential to Plaintiff's intent, or if the right of first refusal was collateral to Plaintiff's intent to issue Defendants a loan.

The parties' extrinsic evidence does little to resolve the parties' intent. Plaintiff primarily rests its argument that the term is severable on the Notes' non-assignment of specific consideration for the right of first refusal. (*See* Pl.'s MSJ 25:1–24). Plaintiff also argues that the parties primarily intended to create a loan agreement "because Defendants were facing critical deadlines to purchase the Real Property and repay HH[], [Insight,] and BP." (*Id.* 24:23–27); (citing Mullen Email, Oct. 4, 2016, Ex. 12 to Pl.'s MSJ, ECF No. 184-2) ("We advanced these monies almost a month ago because you told us that you were against a critical time issue on both the real estate and the BP note."); (Seltzer Dep. 190:14–22, Ex. 6 to Pl.'s MSJ, ECF No. 183-1) (explaining that Plaintiff made the loan at a "critical time" to pay prior debts and acquire the real property); (Mullen Dep. 106:3–23, Ex. 7 to Pl.'s MSJ, ECF No. 183-2) (explaining that despite knowing Defendants' business was federally illegal, Plaintiff advanced the loan to help them pay prior debts); (Mullen Dep. 122:10–17) (explaining that Defendants wanted to borrow money from Plaintiff "to pay out BP."). Defendants contend that Plaintiff primarily extended the loan to obtain a path to an equity investment in Defendants' business through the right of first refusal. (Defs.' MSJ 25:13–27); (Misle Decl. ¶ 16, Ex. 1 to Defs.' MSJ, ECF No. 186-1) (explaining that Plaintiff, when attempting to exercise its right of first refusal, stated, "I don't give a damn what you guys keep doing with BP in the deal as long as we're not diluted and it comes from your end only); (Idleman Dep. 103:17–25, Ex. 4 to Defs.' MSJ, ECF No. 186-1) (admitting he stated "I don't really give an mmmm about BP . . . just as long as they don't impact our rights under this right of first refusal in our loan, just as long as they don't dilute any future equity we may pick up); (Defs.' Resp. to Pl.'s MSJ 7:25–4); (citing

Idelman Dep. 166:2–16, 202:11–13, 253:11–20, Ex. C to Defs.' Resp., ECF No. 191-1) (explaining that Plaintiff had interest in an equity deal with Defendants when it first executed the Notes, but Plaintiff later lost interest because Defendants allowed BP to convert its note to equity, and Plaintiff thought an investment would be risky after the 2016 election).

It bares mentioning that the severability inquiry requires the Court to ask if enforcement of the Contract after severing the illegal terms would effectuate the parties' intent *at the time the Contract was entered. See Vincent*, 647 P.2d at 381; *Sprouse*, 781 P.2d at 1140–41. If the Court finds that Plaintiff would not have offered Defendants a loan without receiving a right of first refusal as consideration, then the right of first refusal is not collateral to the parties' intent in entering the transaction, and the entire Contract is unenforceable. Plaintiff's present lack of interest in exercising its right of first refusal is irrelevant.

There remains a dispute of fact that the Court cannot decide at summary judgment. Plaintiff's extrinsic evidence demonstrates that Defendants sought the loan to purchase real estate and repay existing lenders, but the evidence does not speak to whether Plaintiff would have made the loan without receiving a right of first refusal. Defendants' evidence suggests that Plaintiff placed considerable value on its right of first refusal, but the evidence does not establish whether the provision was essential to the consummation of the agreement. Given the dispute of material fact, the Court leaves its severability determination for trial.

### B. Unjust Enrichment

Plaintiff argues that if it does not prevail on its breach of contract claim, it should recover under its unjust enrichment theory. (*See* Pl.'s MSJ, 26:1–27:25). Given that the Court would only reach Plaintiff's alternative unjust enrichment claim if the Court were to determine the Contract is illegal and incapable of severance, the Court concludes that Plaintiff's unclean hands would bar its recovery for unjust enrichment.

Under Nevada law, unjust enrichment claims have the following three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014) (citing *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)). However, unjust enrichment arises in equity, and "[t]he unclean hands doctrine generally bars a party from receiving equitable relief because of that party's own inequitable conduct." *See Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 182 P.3d 764, 766 (Nev. 2008) (internal quotations omitted) (quoting *Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228 (4th Cir. 2000)).

Generally, a party cannot recover for unjust enrichment based upon an illegal agreement because "[n]o court should be required to serve as paymaster of the wages of a crime." *Loomis v. Lange Fin. Corp.*, 865 P.2d 1161, 1165 (Nev. 1993) (internal quotations omitted) (quoting *Stone v. Freeman*, 82 N.E.2d 571, 572 (N.Y. 1948)). The prohibition on enforcement exists "for the purposes of protecting the public and the courts from imposition." *Magill v. Lewis*, 333 P.2d 717, 719 (Nev. 1958) (quoting *Norwood v. Judd*, 209 P.2d 24 (Cal. Ct. App. 1949)). However, a narrow exception arises when, "by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff . . ." *Id. See also Loomis*, 865 P.2d at 1165 (explaining that the *Magill* exception applies when the plaintiff otherwise "substantially complied with the [law].") (quoting *Nev. Equities v. Willard Pease Drilling*, 440 P.2d 122, 123 (Nev. 1968)). Nevertheless, the application of an unclean hands defense is particularly compelling when a plaintiff seeks a remedy that violates criminal

law. *Omstead v. United States*, 277 U.S. 438, 484–85 (1945) (rev'd on other grounds) (Brandeis, J., dissenting). "[T]he court's aid is denied . . . when he who seeks it has violated the law in connection with the very transaction to which he seeks legal redress . . . in order to maintain respect for law . . . ." *Id.*

Plaintiff cannot prevail for unjust enrichment because the parties' Contract involves moral turpitude.[5] If the Contract is unenforceable, it is because Plaintiff invested in Defendants' marijuana cultivation business primarily to obtain a pathway to an equity investment therein. *See* § (A)(3), *supra*. Providing funds in exchange for equity violates the CSA because it would allow the investor to profit from the cultivation, possession, and sale of marijuana. (MTD Order 10:13–23); 21 U.S.C. §§ 841, 846, 856(a)(2). Conspiracy to cultivate marijuana is a crime of moral turpitude. *See, e.g.*, *Collymore v. Lynch*, 828 F.3d 139, 142–46 (2d Cir. 2016); *Desai v. Mukasey*, 520 F.3d 762, 764–66 (7th Cir. 2008); *In re Sanchez Gomez*, 115 D.P.R. 74, 75 (P.R. 1984); *People v. Gabriel*, 206 Cal. App. 4th 450, 459 (Cal. Ct. App. 2012).

Plaintiff argues that the Court should allow its recovery for unjust enrichment because, "[t]he transaction has been completed, Bart Street has never grown or sold marijuana, Defendants are the only parties involved with marijuana, marijuana is legal in Nevada, and allowing Defendants to keep the $4.7M would unjustly enrich Defendants at Bart Street's expense." (Pl.'s MSJ 27:15–18). It is irrelevant that the Nevada legislature "legalized" marijuana because marijuana is illegal under federal law, and the CSA preempts Nevada law under the Constitution's Supremacy Clause. *United States v. Nixon*, 839 F.3d 885, 888 (9th Cir. 2016). In determining whether moral turpitude is involved in the transaction, it is not the job of

---

[5] The Court's conclusion presupposes that the parties' Contract is illegal. If the Court concludes that the parties' Contract was legal, then Plaintiff will recover for breach of contract. Given that Plaintiff only raises its unjust enrichment claim in the alternative, recovery for breach of contract would moot Plaintiff's unjust enrichment theory.

the Court to weigh the policy considerations behind federal marijuana prohibition against Nevada law and the growing trend of state "legalization." Rather, "it is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Allowing Plaintiff's recovery for unjust enrichment would undermine enforcement of federal law by giving prospective investors increased confidence in funding marijuana businesses. The Court may not provide Plaintiff an equitable remedy that would allow Plaintiff to circumvent federal criminal law in order to recover the proceeds of its crime. The Court therefore grants Defendants summary judgment on Plaintiff's unjust enrichment claim.

### C. Discovery Objection

On May 5, 2019, United States Magistrate Judge Cam Ferenbach entered the Order, (ECF No. 193), granting Plaintiff's Motion to Establish Protocols for Searching Texts, (ECF No. 173), and Counter-Motion to Compel ("Counter-Motion"), (ECF No. 178), and Denying Defendants' Motion to Quash, (ECF No. 175). Defendants object to the portions of the Order granting the Counter-Motion and denying the Motion to Quash. (Obj. 1:25–28, ECF No. 198). The Court finds no reason to depart from Judge Ferenbach's Order.

The competing motions concern a subpoena Plaintiff served just before the close of discovery (the "Subpoena"). Defendants argue that its Motion to Quash should have been granted because: (1) the Subpoena violated the Scheduling Order because it was filed on the last day of discovery; and, even if timely filed, (2) the Subpoena must be denied under Fed. R. Civ. P. 34 and LR 26-7 because it was not preceded by a "meet and confer." (*Id.* 1:28–2:11, 2:22–3:8, 4:20–6:27, 10:1–28). Alternatively, Defendants argue that, (3) the Subpoena should be denied as overbroad because it seeks information protected by the attorney-client privilege and work product doctrine. (*Id.* 7:1–9:26).

The Court finds the Objection lacking. Plaintiff's Subpoena was timely because, while magistrate judges may in their discretion require a subpoena seeking documents be filed thirty days before the close of discovery so that compliance may be completed before the scheduling order's discovery deadline, it is not an abuse of discretion to allow a subpoena to be served at a later time within the discovery period. *Cf. Fabery v. Mid-South Ob-GYN, PLLC*, No. 06-2136 D/P, 2008 U.S. Dist. Lexis 39679, 2000 WL 35641544, at *1 (W.D. Tenn. May 15, 2008) ("A subpoena that seeks documents under Federal Rule of Civil Procedure 45 is a discovery device subject to the same deadlines as other forms of discovery set forth in the court's scheduling order."). Judge Ferenbach appropriately acted within his discretion because Plaintiff "first learned about the documents during the last week of discovery at Seltzer's deposition. Due to the timing of that deposition, it would not have been possible for Bart Street to request the documents 30 days before the discovery deadline." (Pl.'s Resp. to Defs.' Obj., 6:27–7:1, ECF No. 199). Likewise, while subpoenas generally should be preceded by a meet and confer, it is not an abuse of discretion for a magistrate judge to enforce a subpoena that is served without a preceding meet and confer. *See LHF Prods., Inc. v. Koehly*, No. 2:16-cv-02028-JAD-NJK, 2017 U.S. Dist. LEXIS 173834, 2017 WL 4767673, at *4 (D. Nev. Oct. 19, 2017) ("These cases make clear that, notwithstanding the language of the local rule, 'the court ultimately retains discretion to decide discovery motions even where no proper meet and confer has been conducted.'") (quoting *Mielke v. Standard Metals Processing, Inc.*, No. 2:14-cv-01763-JCM-NJK, 2015 U.S. Dist. LEXIS 60000, 2015 WL 2152664, at *1 (D. Nev. May 7, 2015)).

Finally, the Court concludes that Judge Ferenbach appropriately limited the risk that enforcement of the Subpoena would reveal privileged or confidential information. Judge Ferenbach Ordered Defendants to provide a privilege log to the extent any information sought is confidential. (*See* Order, ECF No. 193). Not only do Defendants fail to argue that the safeguard is inadequate, they do not acknowledge the protection in their Objection. For the

aforementioned reasons, Defendants have not demonstrated that Judge Ferenbach's Order was clearly erroneous, and their Objection is denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 180), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 185), is **GRANTED in part** and **DENIED in part**. The Court grants Defendants' Motion with respect to Plaintiff's unjust enrichment claim. The Court denies the Motion on Plaintiff's breach of contract claim.

**IT IS FURTHER ORDERED** that Defendants' Objection, (ECF No. 198), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file their proposed joint pretrial order by June 1, 2020.

**IT IS FURTHER ORDERED** that pursuant to Local Rule 16-5, this case is **REFERRED** to Magistrate Judge Ferenbach for a settlement conference.

**DATED** this __31__ day of March, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court